2000 ME 40

**Edward H. WILLIAMS**

v.

**E.S. BOULOS CO.**

and

**Commercial Union Insurance Co.**

Supreme Judicial Court of Maine.

Argued Dec. 7, 1999.
Decided March 1, 2000.

Douglas S. Kaplan (orally), Kaplan & Grant, Portland, for employee.

John H. King Jr. (orally), Norman Hanson & DeTroy, LLC, Portland, for employer.

John F. Lambert Jr., Thomas V. Laprade, Lambert, Coffin, Rudman & Hochman, for amicus curiae Maine Workers' Comp. Residual Market Pool.

John M. McCallum, Thomas R. Kelly, Robinson Kriger & McCallum, Portland, for amici curiae Maine Municipal Ass'n, Hanover Ins. Co., AIG Claim Services, Travelers Ins. Co., Sedgwick Claims Management Services, and American Pacific Ins. Co.

Joeseph M. Hochadel, Monaghan, Leahy, Hochadel & Libby, LLP, Portland, for amici curiae Mead Paper, Central Maine Power, and Bath Iron Works.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, ALEXANDER, and
CALKINS, JJ.

WATHEN, C.J.

[¶ 1] The employee, Edward H. Williams, appeals from a decision granting the employer's petition for review and granting, in part, his petition to determine maximum medical improvement. Pursuant to the law in effect in 1989, employees were entitled to 400 weeks of partial benefits from the date of maximum medical improvement. 39 M.R.S.A. § 55–B (1989), *amended by* P.L.1991, ch. 615, § D–7, *repealed by* P.L.1991, ch. 885, § A–7. The issue is whether the Hearing Officer erred in concluding that the 400–week limitation in the statute refers to calendar weeks rather than weeks in which partial incapacity benefits are received. Because we conclude that the 400–week limitation refers to weeks during which partial benefits are received, rather than calendar weeks, we vacate the Hearing Officer's decision. The second issue is whether a previous finding of maximum medical improvement precludes a new finding of maximum medical improvement when the employee's level of permanent impairment has significantly changed since the previous decree. 39 M.R.S.A. § 2(14) (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 102(15) (Pamph.1999)). We agree with the Hearing Officer that a finding of maximum medical improvement in a previous decree may not be altered by changed circumstances, including a subsequent increase in

the employee's level of permanent impairment.

## I.

[¶ 2] The facts are not in dispute. Williams suffered a work-related knee injury on June 24, 1989, while employed by E.S. Boulos Co. Williams received voluntary payment of benefits for total incapacity until 1992, when, by decree, his benefits were reduced to reflect 75% partial incapacity. The employee's benefits were subsequently increased to total incapacity in 1995 after undergoing left-knee replacement surgery. In 1997 the employee's benefits were altered by a Board decision to reflect 100% partial incapacity, based on a finding of partial physical incapacity coupled with an inability to obtain employment. *See, e.g., Ibbitson v. Sheridan Corp.*, 422 A.2d 1005, 1008–11 (Me.1980). In sum, the employee has received short-term periods of total and partial benefits adding up to over 529 weeks, but only 233 of those weeks have been for partial incapacity. In a 1992 decree, and a subsequent decree in 1993, Williams was determined to have reached maximum medical improvement in April 1990 and was awarded benefits for 9% whole body permanent impairment.

[¶ 3] In 1998 E.S. Boulos filed a petition for review of incapacity, seeking to terminate benefits based on the expiration of 400 weeks since the date of maximum medical improvement, and Williams filed a petition to determine permanent impairment seeking a change of his date of maximum medical improvement as a result of his surgery in 1995 and seeking additional permanent impairment benefits. The Hearing Officer granted the employer's petition for review, concluding that the 400 week-limitation refers to calendar-weeks and not weeks that partial benefits are received, and therefore the employee's entitlement to partial benefits had expired. The Hearing Officer also granted, in part, the employee's petition and awarded an increase in permanent impairment benefits from 9% to 15%. Notwithstanding the increase in permanent impairment benefits, the Hearing Officer rejected the employee's contention that he is entitled to a new date of maximum medical improvement, concluding that the date of maximum medical improvement had been established by the 1992 decision as a matter of res judicata. We granted the employee's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Pamph.1999).

## II.

[¶ 4] We first turn to the issue of the 400–week limitation in former section 55–B, according to the language of that statute in effect in 1989,[1] which provides, in pertinent part:

> While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earning or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury .... Payments under this section shall not continue for longer than 400 weeks after maximum medical improvement.
>
> . . .

P.L.1987, ch. 559, Pt. B, § 30 (codified at 39 M.R.S.A. § 55–B), *amended by* P.L. 1991, ch. 615, § D–7, *repealed by* P.L.1991, ch. 885, § A–7.

[¶ 5] The Hearing Officer in this case concluded that the statutory language was "plain and unambiguous" in its reference to calendar weeks, as opposed to benefit

---

1. Former section 55–B was amended in 1991. *See* P.L.1991, ch. 615, § D–7, *repealed by* P.L. 1991, ch. 885, § A–7. Because the 1991 amendments do not apply retroactively to injuries occurring prior to their effective date, *see* P.L.1991, ch. 615, D–26, our construction is limited to the language of the statute in effect at the time of the employee's injury in 1989.

weeks. We disagree.[2] If the statute provided either that "the employee may not receive payment of partial benefits later than 400 weeks after the date of maximum medical improvement," or that "entitlement to partial benefits under this section terminates 400 weeks after the date of maximum medical improvement," then we would conclude that the language unambiguously refers to time, i.e., calendar weeks, as opposed to something else, i.e., the duration of payments. The subject of the sentence, however, is not *weeks,* but *"payments* under this section;" the object of the sentence is to provide how long those *payments* shall continue. Use of the word "payments," as opposed to "weeks" or some other measurement of time, suggests that 400–week limitation refers to weeks of actual payment of benefits. Moreover, the phrase "under this section" suggests that only weeks of partial benefits, and not total, are to be included in the 400–week limitation.

[¶ 6] Examination of other sections of the Act with durational limitations also supports our interpretation, and suggests that the Legislature is capable of clearly setting a time-limit based on calendar weeks when it intends such a result. The former vocational rehabilitation statute, enacted at the same time as the statutory language at issue in this case, provided: "If an employer has failed to reemploy an injured employee ... within one year from the date of maximum medical improvement, ... the employer or employee may petition the commission for an order requiring a fixed period of formal retraining." P.L.1987, ch. 559, Pt. B, § 38 (codified at 39 M.R.S.A. § 86–A(1) (1989)), *repealed by* P.L.1991, ch. 885, § A–7. Subsection 5 of the same section provides: "If retraining is ordered under this section, the employer's obligation to pay compensation under section 54–B or 55–B terminates 6 months after the period fixed for completion of the retraining program ...." 39 M.R.S.A. § 86–A(5), *repealed by* P.L.1991, ch. 885, § A–7. Similarly, former section 66–A, involving reinstatement rights, provides: "The employer's obligation to reinstate the employee continues until one year after the employee has reached the stage of maximum medical improvement in the judgment of the commission...." P.L. 1987, ch. 559, Pt. B, § 35 (codified at 39 M.R.S.A. § 66–A(3) (1989)), *repealed by* P.L.1998, ch. 885, § A–7. Former section 54–B provided: "Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually." P.L.1987, ch. 559, Pt. B, § 27 (codified at 39 M.R.S.A. § 54–B (1989)), *repealed by* P.L.1991, ch. 885, § A–7. Unlike section 55–B, all of these provisions are based solely on the passage of time and are not qualified by the occurrence of some additional event, such

2. Ordinarily, we defer to decisions of the Board interpreting the Act. Williams has shown, however, that decisions of the Hearing Officers are split on this issue, and the full Board has not addressed the issue either in a rule or in the exercise of its appellate authority. Whether 400 weeks was intended to refer to calendar weeks or weeks in which partial incapacity benefits are received is a classic example of an issue that the Blue Ribbon Commission contemplated the full Board in its appellate capacity would decide. *See* Blue Ribbon Commission to Examine Alternatives to the Workers' Compensation System and to Make Recommendations Concerning Replacement of the Present System, Report (August 31, 1992). The Blue Ribbon Commission established a mechanism for a Hearing Officer to request a full Board review of the Hearing Officer's decision "if the decision involves an issue that is of significance to the operation of the workers' compensation system." 39–A M.R.S.A. § 320 (Pamph.1999). The Board has access to information that will permit it to balance the protection of workers against the costs to the employers. Without guidance from the Board and without the benefit of the information necessary to weigh the policy considerations; i.e., are the existing rates predicated on an actuarial assumption of benefit weeks or calendar weeks, we decide the issue solely on the basis of statutory construction and legislative history. *See Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 588 (Me. 1996). It is impossible to balance costs and benefits in the complete absence of any information concerning costs and benefits.

as the "payment" of benefits "under this section."

[¶ 7] Moreover, the former partial incapacity statute prior to 1973 provided a calendar-week limitation with language stating that: "in no case shall the period covered by [partial] compensation be greater than 300 weeks from the date of the accident...." *See, e.g.,* 39 M.R.S.A. § 55 (1964), *amended by* P.L.1973, ch. 531. Unlike the subsequent language in section 55–B, the emphasis in the former statute was not on "payments under this section," but the *"period* covered by ... [partial] compensation," more clearly suggesting a time limitation, as opposed to a limitation of the number of payments.

[¶ 8] Our conclusion is also supported by the statute's legislative history. After considering several proposed amendments in 1987, the Legislature enacted L.D.1929 (113th Legis.1987). *See* P.L.1987, ch. 559, § 17; *see generally Adams v. Mt. Blue Health Ctr.,* 1999 ME 105, ¶ 11, 735 A.2d 478, 480–81. The first proposed bill in 1987 came from the Governor's office: AN ACT TO REFORM THE MAINE WORKERS' COMPENSATION ACT TO ASSURE COVERAGE FOR MAINE WORKERS, L.D.1918, (113th Legis.1981). The Governor's proposed draft for the partial incapacity statute provided, in pertinent part:

> ... Payments shall not continue subsequent to maximum medical improvement for longer than the number of weeks shown in the following schedule:

| Percent of Permanent Impairment | Number of Weeks |
| --- | --- |
| Less than or equal to 25 | 400 |
| 26 to 50 | 500 |
| 57 to 75 | 600 |
| 76 or more | Lifetime |

L.D.1918, § 18. The phrase "under this section" does not appear in this draft as in the subsequently enacted bill. The subsequent insertion of the phrase "under this section" suggests a conscious decision on the part of the Legislature that weeks of total incapacity were not intended to be included in the 400–week limit.[3] Accordingly, we conclude, based on the language and the legislative history, that the Legislature intended to include only weeks of partial incapacity (including 100% partial incapacity) in the calculation of the 400–week limitation in the applicable version of former section 55–B effective for injuries in 1989.

### III.

[¶ 9] Because Williams was able to establish an increase in his level of permanent impairment based on his surgery in 1995,[4] Williams contends that he should also be entitled to a new date of maximum medical improvement subsequent to the 1995 surgery, and, consequently, a new 400–week clock for purposes of former section 55–B. Williams contends that, contrary to the Hearing Officer's conclusion, res judicata should not bar an employee from establishing a new date of maximum medical improvement after a subsequent change of circumstances. We disagree. As Williams notes, the term "'[p]ermanent impairment' means any anatomic or functional abnormality or loss existing after the date of maximum medical improvement which results from the injury." 39 M.R.S.A. § 2(15) (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 102(16) (Pamph.1999)). The term, "maximum medical improve-

---

**3.** The Statement of Fact for L.D.1929, and for its predecessor, L.D.1928, provides: "Benefits paid under the new draft to employees classified as partially incapacitated are subject to a 400–week duration limit and will not be adjusted annually." L.D.1928, § 30; L.D.1929, § 30. We do not agree with the employer that reference to a "duration limit" in this statement is dispositive. The term "duration" may refer to calendar weeks or the duration of benefit payments.

**4.** The employer has not chosen to appeal the Board's decision and we are therefore not required to address whether it was proper for the Board to award an increase in permanent impairment benefits based upon changed circumstances.

ment," is defined as "the date after which further recovery and further restoration of function can no longer be reasonably anticipated, based upon reasonable medical probability." 39 M.R.S.A. § 2(14) (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 102(15) (Pamph.1999)). Accordingly, maximum medical improvement is not based on reasonable probability that an employee's condition *will not change*, as the employee suggests; it is based on the probability that the condition *will not improve*. Because maximum medical improvement is a prediction that an employee's condition will not improve, we find nothing inconsistent in a finding that permanent impairment has increased, but that the employee's date of maximum medical improvement has not changed. The employee's condition in this case has not improved, and, therefore, there is no requirement in law or in logic to fix a new date of maximum medical improvement.

 [¶ 10] Moreover, we agree with the employer that the Legislature in enacting section 55–B in 1987 intended the determination of maximum medical improvement to be a one-time determination, under the assumption that 400 weeks is enough time for either retraining or finding new employment.[5] *See, e.g.*, 3 Legis. Rec. 49 (2nd Spec.Sess.1987) (Statement of Sen. Dutremble); 3 Legis. Rec. 26 (2nd Spec.Sess. 1987) (Statements of Rep. Ruhlin and Rep. Willey). As we have stated, the purpose of the 1987 amendments was to reduce workers' compensation generally, particularly in cases of partial incapacity. *See Adams*, 1999 ME 105, ¶ 10, 735 A.2d at 480–81. Under the employee's interpretation, it would be too easy for employees to show a minor change in their condition, either deterioration or improvement, to disprove an earlier determination of maximum medical improvement, and therefore start a new 400–week clock. Such an interpretation would nullify the 400–week limitation as an

effective brake on the cost of partial benefits. We therefore conclude that a finding of maximum medical improvement may not be altered by a subsequent change of circumstances in the employee's condition, including an increase in permanent impairment.

The entry is:

The decision of the Workers' Compensation Board is vacated, in part. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

---

5. We do not address the effect of a subsequent work-related injury on the 400–week limita-

tion or on a finding of maximum medical improvement.