2001 ME 32

Stephen W. RUSSELL

v.

RUSSELL'S APPLIANCE SERVICE.

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2001.
Decided: Feb. 12, 2001.

David A. Chase, Esq., (orally), Macdonald Chase & Szewczyk, Bangor, for employee.

Wayne P. Doane, Esq., (orally), Exeter, for employer.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] The employee, Stephen W. Russell, appeals from a decision of a hearing officer of the Workers' Compensation Board denying his petition for review. Russell's employer, without seeking prior approval of the Board, discontinued Russell's workers' compensation benefits after paying 400 weeks of partial incapacity benefits. When Russell received a notice from the employer that his benefits would end in

ten days, Russell sought review from the Board. The hearing officer held that Russell was entitled to a twenty-one day notice of discontinuation, and because the employer failed to provide such notice, Russell was entitled to an additional twenty-one days of benefits. The hearing officer denied Russell's request to continue the payment of benefits through the date of the hearing officer's decree. Because we conclude that the hearing officer applied the wrong statutory provision, we vacate the decision.

[¶ 2] Russell suffered a workplace injury in 1988 while employed by Russell's Appliance Service. By a decision of April 29, 1991, the former Workers' Compensation Commission awarded Russell partial incapacity benefits pursuant to former 39 M.R.S.A. § 55–B (Pamph.1988), *amended by* P.L.1989, ch. 575, *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (Pamph. 2000)). By a later decision the former Commission determined that Russell reached maximum medical improvement of the 1988 injury on February 21, 1991. Pursuant to former section 55–B, this latter decision meant that Russell was entitled to receive a maximum of 400 weeks of benefits for the 1988 injury.[1]

[¶ 3] The employer sent a certified notice to the Board and to Russell, dated April 12, 1999, stating that the employer would discontinue the payment of benefits to Russell effective April 22, 1999. The employer had determined that as of that date Russell was no longer eligible for benefits because he had received benefits for more than 400 weeks. Russell then petitioned the Board for a review and claimed that the employer did not follow the statutory procedural requirements for discontinuing benefits. A hearing officer issued a provisional order on July 12, 1999, stating that Russell was entitled to twenty-one days' notice and directing the employer to pay Russell benefits for a period of twenty-one days following the April 12, 1999, notice.

[¶ 4] Thereafter, the hearing officer held a hearing and issued a final order, dated November 15, 1999. The hearing officer found that the 400–week limitation on Russell's partial incapacity benefits had expired on April 22, 1999. The hearing officer determined that 39–A M.R.S.A. § 205(9)(B)(1) (Pamph.2000) governed the discontinuance of Russell's benefits and concluded, therefore, that the employer was required to give Russell twenty-one days' notice of the discontinuance of benefits. The hearing officer further concluded that Russell was not entitled to any benefits beyond those specified in the provisional order, that is, twenty-one days of benefits after the April 12, 1999, notice of discontinuance.

[¶ 5] The first issue raised by this appeal is whether the employer was entitled to discontinue Russell's benefits unilaterally, that is, without seeking an order from the Board allowing the discontinuance. The employer contends that former section 55–B, with its 400–week limitation, contains no procedural steps for discontinuance of benefits, and, when the limit is reached, an employer may stop an employee's benefits without going through any procedural hoops. The employee, on the other hand, points to subsection 205(9), and argues that it sets forth the requirements that an employer must follow for

---

1. The pertinent portion of former section 55–B states:

   While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earning or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury, but not more than the maximum benefit under section 53–B. Payments under this section shall not continue for longer than 400 weeks after maximum medical improvement.

   39 M.R.S.A. § 55–B (Pamph.1988), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8.

any discontinuance or reduction of benefits.

[¶ 6] Subsection 205(9) is titled "Discontinuance or reduction of payments." 39–A M.R.S.A. § 205(9) (Pamph.2000).[2] The first paragraph of subsection 205(9) states that an employer "may discontinue or reduce benefits according to this subsection." *Id.* The following paragraph states that when an employee has returned to work for the employer or has received an increase in pay, the employer may discontinue or reduce the benefits to the employee. 39–A M.R.S.A. § 205(9)(A). The next paragraph of the subsection provides that "[i]n all [other] circumstances ... if the employer ... determines that the employee is not eligible for compensation under this Act, the employer ... may discontinue or reduce benefits *only* in accordance with this paragraph." 39–A M.R.S.A. § 205(9)(B) (emphasis added). We agree with the hearing officer insofar as he held that paragraph 205(9)(B) is applicable when the employer seeks to discontinue an employee's benefits for the reason that the employee's receipt of benefits is subject to the 400–week limitation in former section 55–B. Paragraph 205(9)(B), by its explicit terms, clearly expresses the intention of the Legislature that in all circumstances, except when the employee has returned to work or received an increase in pay, an employer must adhere to the procedural requirements of the paragraph before discontinuing benefits.

2. Subsection 205(9) reads as follows:

**9. Discontinuance or reduction of payments.** The employer, insurer or group self-insurer may discontinue or reduce benefits according to this subsection.

    **A.** If the employee has returned to work with or has received an increase in pay from an employer that is paying compensation under this Act, that employer or that employer's insurer or group self-insurer may discontinue or reduce payments to the employee.

    **B.** In all circumstances other than the return to work or increase in pay of the employee under paragraph A, if the employer, insurer or group self-insurer determines that the employee is not eligible for compensation under this Act, the employer, insurer or group self-insurer may discontinue or reduce benefits only in accordance with this paragraph.

    **(1)** If no order or award of compensation or compensation scheme has been entered, the employer, insurer or group self-insurer may discontinue or reduce benefits by sending a certificate by certified mail to the employee and to the board, together with any information on which the employer, insurer or group self-insurer relied to support the discontinuance or reduction. The employer may discontinue or reduce benefits no earlier than 21 days from the date the certificate was mailed to the employee. The certificate must advise the employee of the date when the employee's benefits will be discontinued or reduced, as well as other information as prescribed by the board, including the employee's appeal rights.

    **(2)** If an order or award of compensation or compensation scheme has been entered, the employer, insurer or group self-insurer shall petition the board for an order to reduce or discontinue benefits and may not reduce or discontinue benefits until the matter has been finally resolved through the dispute resolution procedures of this Act, any appeal proceedings have been completed and an order of reduction or discontinuance has been entered by the board.

    **C.** The employee may file a petition for review, contesting the employer's discontinuance or reduction of compensation under this subsection. Regardless of whether the employee files a petition prior to the date of the discontinuance or reduction, benefits may be discontinued or reduced as described in paragraph A or B.

    **D.** The board, within 21 days after the employee filed a petition for review, may enter an order providing for a continuation or reinstatement of benefits pending a hearing on the petition. The order must be based upon the information submitted by both the employer, insurer or group self-insurer and the employee under this subsection....

    **E.** In all cases under this subsection, the board shall provide for an expedited procedure that must be available upon request of any party.

    **F.** If benefits have been discontinued or reduced pursuant to paragraph A or B and the board, after hearing, determines that benefits have been wrongfully withheld, the board shall order payment of all benefits withheld together with interest at the rate of 6% a year....

39–A M.R.S.A. § 205(9) (Pamph 2000).

[¶ 7] Subsection 205(9) reflects a legislative intent to permit unilateral employer discontinuances or reductions of benefits only when the grounds for termination are relatively free from dispute, that is, when the employee has returned to work with, or has received an increase in pay from, an employer paying compensation. Although this case presents a situation without disagreement as to the application of the 400–week limitation, other cases involving the 400–week limitation are not so clear. For example, the date of maximum medical improvement, which is the operative date from which the 400–week period runs, may be in dispute. *See, e.g., Williams v.. E.S. Boulos Co.,* 2000 ME 40, ¶¶ 9–10, 747 A.2d 181, 185–86. Moreover, when an employee has received 400 weeks of full or "total" compensation, it is not always apparent whether the employee has received 100% partial incapacity benefits under section 55–B, or benefits for total incapacity under former 39 M.R.S.A. § 54–B (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8, which may not be included in the 400–week calculation. *See, e.g., Toothaker v. Lauri, Inc.,* 631 A.2d 1241, 1243 (Me.1993) (receipt of full benefits pursuant to memorandum of payment does not conclusively establish total incapacity); *see also Williams,* 2000 ME 40, ¶¶ 5–8, 747 A.2d at 183–85 (weeks of total incapacity not included in 400–week limitation). We find no evidence of a legislative intent to permit employers to determine unilaterally whether maximum medical improvement has been reached or whether, and to what extent, payments have been made for partial as opposed to total incapacity. There is also the situation that occurs when a worker is receiving benefits for two workplace injuries, and only one injury is subject to the 400–week limitation. In such a situation a question may arise as to the amount of benefits the employee is entitled to receive once the 400–week limitation is reached. *See Cust v. Univ. of Maine,* 2001 ME 29, ¶¶ 3, 4, 766 A.2d 566 (2001). Because there are differing situations relating to the calculation of the 400–week limitation, the Legislature determined that some procedural protections are necessary for the employee.

[¶ 8] Having determined that the 400–week limitation in former section 55–B is not self-executing and that paragraph 205(9)(B) is applicable, the remaining issue in this case is whether subparagraph 205(9)(B)(1) or (B)(2) covers Russell's circumstance. 39–A M.R.S.A. §§ 205(9)(B)(1), (2). The hearing officer determined that pursuant to former section 55–B an order requiring payment of partial incapacity benefits expires by operation of law at the expiration of the 400–week limitation period, thus allowing an employer to unilaterally discontinue benefits under section 205(9)(B)(1) with a twenty-one-day notice. We disagree.

[¶ 9] By its terms, subparagraph 205(9)(B)(1) is applicable when "no order or award of compensation or compensation scheme has been entered." In this circumstance, the employer may discontinue benefits by notifying the employee and the Board twenty-one days in advance. Russell's benefits, however, were pursuant to an award of compensation, dated April 29, 1991, which awarded him partial incapacity benefits at a level of 35%. Even if there is no dispute that the 400–week limitation period has expired, subparagraph 205(9)(B)(1) is, nevertheless, inapplicable because an award of compensation had been entered. Thus, subparagraph 205(9)(B)(1) is not applicable to Russell.

[¶ 10] Subparagraph 205(9)(B)(2) states that if an award of compensation has been entered, the employer "shall petition the board for an order to reduce or discontinue benefits." 39–A M.R.S.A. § 205(9)(B)(2). Furthermore, the employer is not allowed to "reduce or discontinue benefits until the matter has been finally resolved." *Id.* Because Russell was receiving his partial incapacity benefits pursuant to the April 29, 1991, award of compensation, subparagraph 205(9)(B)(2) is applica-

ble. The employer did not follow the dictates of (B)(2). Because Russell is entitled to a continuation of benefits beyond the twenty-one days allowed by the hearing officer, we must remand this case to the Board with directions that it apply subparagraph 205(9)(B)(2).[3]

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

DANA, Justice, with whom SAUFLEY, Justice, joins, concurring.

[¶ 11] Because an employer may bring an action in advance of the 400–week deadline and thereby limit its exposure to the 400 weeks of benefits provided by the Legislature, I concur in this opinion.

**3.** We recognize the possibility that subparagraph B(2), requiring that benefits continue until final resolution of the petition, may result in employers paying benefits in excess of 400 weeks. The statute is silent on the timing of the employer's petition to discontinue benefits. We suggest that the Board, with its broad rule-making authority, (*see* 39–A M.R.S.A. § 152(2) (Pamph.2000)), consider promulgating a fair, workable, and cost-effective procedure for discontinuing benefits pursuant to the 400–week rule, consistent with the general requirements of subparagraph B(2). As we have stated, "[t]he Act reflects not so much a legislative intent to comprehensively address every workers' compensation issue in a detailed and specific way, but to commit some issues to a process in which the participants in the system, labor and management, can work out flexible and realistic solutions." *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 588 n. 2 (Me.1996).