2003 ME 10

**Michael YOUNG**

v.

**CENTRAL MAINE POWER COMPANY.**

Supreme Judicial Court of Maine.

Argued: Oct. 10, 2002.
Decided: Jan. 23, 2003.

Jeffrey L. Cohen (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, for employee.

William O. LaCasse, Norman, Hanson & DeTroy, L.L.C., Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The employer, Central Maine Power Co. (CMP), appeals from a decision of a hearing officer of the Workers' Compensation Board, denying the employer's petition for review seeking a prospective order permitting CMP to terminate benefits after the payment of 400 weeks of partial incapacity benefits pursuant to 39 M.R.S.A. § 55–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (2001 & Supp.2002)). The hearing officer

denied the petition, concluding that the issue of an employer's ability to terminate benefits pursuant to the 400-week limitation is not ripe until the 400-week termination date has been reached. We disagree and vacate the decision.

## I. BACKGROUND

[¶ 2] The parties have stipulated to the essential facts. The employee, Michael L. Young, suffered a work-related injury on November 10, 1989 while employed at CMP, and returned to work after the injury, earning less than his pre-injury wage. CMP paid partial incapacity benefits pursuant to a 1991 decree. In a later decree, a hearing officer found that Young's date of maximum medical improvement was August 27, 1994.

[¶ 3] CMP filed a petition for review of incapacity in June 2001, seeking a determination that Young's benefits will expire on May 6, 2002 pursuant to the 400-weeks limitation for partial incapacity benefits for Young's date of injury. *See* 39 M.R.S.A. § 55–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (2001 & Supp. 2002)). The parties agreed to forego a hearing on the factual issues, stipulating that "[t]he sole issue to be decided by the Board concerns whether the Employer is entitled to a finding, prospectively, that the Employee's benefits will end on May 6, 2002 as the result of the running of the 400 weeks, pursuant to a Petition for Review prior to the actual date that the benefits have run." In connection with this proceeding, Young stipulated that: (1) on February 5, 2002 (the date of the stipulation), he was partially incapacitated; (2)

the date of maximum medical improvement was August 24, 1994; and (3) "barring any change in circumstances between now and May, 2002, the Employee will have received 400 weeks of partial incapacity benefits subsequent to maximum medical improvement, on May 6, 2002."

[¶ 4] On March 13, 2002 the hearing officer denied the petition, concluding that it would be inappropriate to order prospective relief, because the employee's situation may change prior to the actual expiration of 400 weeks. The hearing officer stated, "the matter is not really ripe for a final adjudication on the merits because all of the necessary predicates for benefit termination have yet to occur."[1]

[¶ 5] The hearing officer also stated that "if the underlying facts remain stable, the employer can in the near future file a . . . petition [to terminate benefits] along with a Request for an Expedited Proceeding." The hearing officer suggested further that, in the event that the employer filed a new petition, "[i]t would appear that the requested relief could be granted (assuming all of the underlying facts remain the same) in a fairly expeditious manner, thereby limiting the employer's exposure beyond the 400-week period."

[¶ 6] Two days after the date of the decree, CMP filed a second petition for review with the Board and requested an expedited hearing. On May 13, 2002, the parties again stipulated to the essential facts, and this time, the employee conceded that the 400 weeks had run. On May 15, 2002, the hearing officer signed a stipulated decree permitting CMP to ter-

---

1. The hearing officer stated:
    The general desirability of eliminating employer exposure in a case such as the one presented herein must be balanced against the general undesirability from a decisional and administrative standpoint of entering an order that is essentially contingent on anticipated facts actually materializing. Such an order is undesirable because it can lead to final judgment problems.

minate benefits on that date pursuant to the 400–weeks limitation.[2]

[¶ 7] We granted CMP's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

### A. Mootness

[¶ 8] Young contends that the appeal is moot because, after CMP filed its petition for appellate review, CMP filed for and obtained an order from the hearing officer in a separate proceeding permitting it to terminate benefits pursuant to the 400–week rule. CMP urges us to decide the appeal pursuant to the exceptions to the mootness doctrine. We have recognized an exception to the mootness doctrine in three situations:

(1) Sufficient collateral consequences will result from the determination of the questions presented so as to justify relief;

(2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and the public we may address; or

(3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 17, 738 A.2d 1239, 1243 (quoting *Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1380 (Me. 1996)).

[¶ 9] We agree with CMP that the appeal raises issues of great public concern, particularly to the workers' compensation bar. Moreover, the nature of the issue is such that it would be difficult for a party ever to get this issue before us without

running into mootness problems. An employer or insurer seeking to reduce liability that is denied the opportunity to obtain a prospective order, is likely to obtain an order to terminate benefits shortly after the expiration of the 400–week time limitation, as CMP has done, but while its petition for appellate review from the denial of its prospective order is still pending before us.

[¶ 10] Concluding that CMP's appeal falls within several exceptions to the mootness doctrine, we now address the merits.

### B. The Merits

[¶ 11] At the time of Young's injury, former section 55–B provided, in pertinent part:

While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to 2/3 the difference, due to the injury, between his average gross weekly wages, earning or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury, but not more than the maximum benefit under section 53–B. *Payments under this section shall not continue for longer than 400 weeks after maximum medical improvement.*

. . . .

39 M.R.S.A. § 55–B (1989), *amended by* P.L. 1991, ch. 615, § D–7, *repealed by* P.L.1991, ch. 885, § A–7 (emphasis added).

[¶ 12] Subsection 205(9) provides the procedure for the termination of benefits and provides, in pertinent part:

**9. Discontinuance or reduction of payments.** The employer, insurer or group self-insurer may discontinue or

---

**2.** The record is unclear whether there was an overpayment of one week for the period from the expiration of 400 weeks on May 6, 2002 to the date that the decree was entered, May 15, 2002.

reduce benefits according to this subsection.

**A.** If the employee has returned to work with or has received an increase in pay from an employer that is paying compensation under this Act, that employer or that employer's insurer or group self-insurer may discontinue or reduce payments to the employee.

**B.** In all circumstances other than the return to work or increase in pay of the employee under paragraph A, if the employer, insurer or group self-insurer determines that the employee is not eligible for compensation under this Act, the employer, insurer or group self-insurer may discontinue or reduce benefits only in accordance with this paragraph.

(1) If no order or award of compensation or compensation scheme has been entered, the employer, insurer or group self-insurer may discontinue or reduce benefits by sending a certificate by certified mail to the employee .... The employer may discontinue or reduce benefits no earlier than 21 days from the date the certificate was mailed to the employee....

(2) If an order or award of compensation or compensation scheme has been entered, the employer, insurer or group self-insurer shall petition the board for an order to reduce or discontinue benefits and may not reduce or discontinue benefits until the matter has been finally resolved through the dispute resolution procedures of this Act, any appeal proceedings have been completed and an order of reduction or discontinuance has been entered by the board.

39-A M.R.S.A. § 205(9) (2001).

[¶ 13] We have held that terminations of benefits pursuant to the 400-week limitation must be made in accordance with section 205(9)(B)(2) in cases when there is an existing payment scheme, e.g., an order requiring the payment of benefits. *See Russell v. Russell's Appliance Serv.*, 2001 ME 32, ¶ 10, 766 A.2d 67, 70–71. Our decision in *Russell* is based on the statutory language, and also the practical reality that, in some cases, there will be a dispute concerning whether the 400-week limitation is applicable. As we stated:

Although this case presents a situation without disagreement as to the application of the 400-week limitation, other cases involving the 400-week limitation are not so clear. For example, the date of maximum medical improvement, which is the operative date from which the 400-week period runs, may be in dispute. *See, e.g., Williams v. E.S. Boulos Co.*, 2000 ME 40, ¶¶ 9–10, 747 A.2d 181, 185–86. Moreover, when an employee has received 400 weeks of full or "total" compensation, it is not always apparent whether the employee has received 100% partial incapacity benefits under section 55–B, or benefits for total incapacity under former 39 M.R.S.A. § 54–B (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8, which may not be included in the 400-week calculation. *See, e.g., Toothaker v. Lauri, Inc.*, 631 A.2d 1241, 1243 (Me.1993) (receipt of full benefits pursuant to memorandum of payment does not conclusively establish total incapacity); *see also Williams*, 2000 ME 40, ¶¶ 5–8, 747 A.2d at 183–85 (weeks of total incapacity not included in 400-week limitation). We find no evidence of a legislative intent to permit employers to determine unilaterally whether maximum medical improvement has been reached or whether, and to what extent, payments have been made for partial as opposed to total incapacity. There is also the situation that occurs when a worker is

receiving benefits for two workplace injuries, and only one injury is subject to the 400–week limitation. In such a situation a question may arise as to the amount of benefits the employee is entitled to receive once the 400–week limitation is reached. *See Cust v. Univ. of Maine,* 2001 ME 29, ¶¶ 3, 4, 766 A.2d 566 [, 567]. Because there are differing situations relating to the calculation of the 400–week limitation, the Legislature determined that some procedural protections are necessary for the employee.

*Id.* ¶ 7, 766 A.2d at 70.

[¶ 14] In an attached footnote, however, we recognized the need for a procedure to prevent overpayment of more than 400 weeks of benefits during the hearing and appeal process:

> We recognize the possibility that subparagraph B(2), requiring that benefits continue until final resolution of the petition, may result in employers paying benefits in excess of 400 weeks. The statute is silent on the timing of the employer's petition to discontinue benefits. We suggest that the Board, with its broad rule-making authority, (*see* 39–A M.R.S.A. § 152(2) (Pamph. 2000)), consider promulgating a fair, workable, and cost-effective procedure for discontinuing benefits pursuant to the 400–week rule, consistent with the general requirements of subparagraph B(2). As we have stated, "[t]he Act reflects not so much a legislative intent to comprehensively address every workers' compensation issue in a detailed and specific way, but to commit some issues to a process in which the participants in the system, labor and management, can work out flexible and realistic solutions." *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 588 n. 2 (Me.1996).

*Id.* ¶ 10 n. 3, 766 A.2d at 71. At the time of this decision, the Board has not issued a rule to address this problem.

[¶ 15] The clear purpose of former section 55–B was to limit an employer's liability for partial incapacity benefits to 400 weeks of benefits after the date of maximum medical improvement. The hearing officer's decision precluding a prospective determination will inevitably result in an overpayment in many cases and thwart the legislative intent. We see nothing in the Act or in the Board rules to prevent an employer from seeking and obtaining a prospective determination that benefits will cease pursuant to the 400–week rule on a specific date in the future. If a hearing officer makes such a determination based on a stipulation of the parties or after an evidentiary hearing, the hearing officer should issue a prospective order permitting a termination of benefits on that date. If the circumstances should change in the intervening period after such an order, but prior to the expiration of 400–week date of termination, the employee can file a petition with the Board to show that the date should be extended.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.