2002 ME 114

**Stephen W. DIPIETRO**

v.

**SECRETARY OF STATE.**

No. Cum–01–758.

Supreme Judicial Court of Maine.

Argued: June 11, 2002.
Decided: July 24, 2002.

John S. Campbell, Esq. (orally), Campbell & Associates, P.A., Portland, for plaintiff.

G. Steven Rowe, Attorney General, Gwendolyn D. Thomas, Asst. Attorney General (orally), William H. Laubenstein III, Asst. Attorney General, Kerry O'Brien, Asst. Attorney General, Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Stephen W. DiPietro appeals from the judgment of the Superior Court (Cumberland County, *Warren, J.*) affirming the Secretary of State's six-year suspension of DiPietro's driver's license. DiPietro argues that the Superior Court erred in holding that the Secretary of State had the authority to, without a hearing, impose a suspension that was longer than the 18–month suspension imposed by the court at DiPietro's sentencing for operating under the influence (OUI).[1] We affirm the Superior Court judgment.

## I.  CASE HISTORY

[¶ 2] DiPietro was arrested for OUI with a blood-alcohol content of 0.15% on September 20, 1996. On October 18, 1996, DiPietro was notified by the Secretary of State that his license had been suspended for "at least a 6 year period," because he

---

1. Title 29–A M.R.S.A. § 2411(1) (1996) provides that "[a] person commits OUI, which is a Class D crime unless otherwise provided, if that person operates a motor vehicle: A. While under the influence of intoxicants; or B. While having a blood-alcohol level of 0.08% or more."

had three prior OUI offenses.[2] DiPietro requested an administrative hearing that was scheduled for December 3, 1996. The arresting officer did not appear at the hearing and, therefore, the administrative suspension was rescinded.

[¶ 3] In August 1997, DiPietro appeared before the Superior Court (*Crowley, J.*) and entered a plea of guilty to Class D OUI. *See* 29–A M.R.S.A. § 2411 (1996). DiPietro was then sentenced to 10 days in the alternative sentencing program, fined $700, and his operating privileges were suspended for 18 months, based on the one prior OUI conviction alleged in the complaint. *See id.* § 2411(5)(B).[3] On September 8, 1997, the Secretary of State mailed DiPietro a letter informing him that, as a result of his conviction and prior OUI offenses, his license had been suspended for six years.

[¶ 4] In October 1999, DiPietro's new attorney asked the Bureau of Motor Vehicles why it had imposed a suspension

greater than the one imposed by the court. The assistant director of driver's license services responded by stating that, pursuant to 29–A M.R.S.A. § 2451(3)(D) (1996), the Secretary of State was required to impose the minimum statutory period for suspension and that DiPietro's driving record indicated that the September 20, 1996, violation was his fourth OUI offense within a 10–year period. The letter also noted that DiPietro could treat the Bureau's letter as a final agency action for the purposes of appeal.[4] *See* M.R. Civ. P. 80C(a).

[¶ 5] On November 16, 1999, DiPietro filed a petition for review of a final agency action, pursuant to M.R. Civ. P. 80C, seeking to have the administrative suspension invalidated and his license reinstated. After a hearing, the Superior Court (*Warren, J.*) held that: (1) 29–A M.R.S.A. § 2451 grants the Secretary of State the authority to impose the proper statutorily-delineated suspensions; (2) the administrative license

---

**2.** DiPietro had on his record two prior refusals, from two separate incidents, both on November 24, 1989, and also a conviction for OUI on February 16, 1990. Title 29–A M.R.S.A. § 2401(11) (1996) defines an OUI offense as "an OUI conviction or suspension for failure to submit to a test."

**3.** Title 29–A M.R.S.A. § 2411(5)(B) provides: For a person having one previous OUI offense within a 10–year period:
(1) A fine of not less than $600, except that if the person failed to submit to a test at the request of a law enforcement officer, a fine of not less than $800;
(2) A period of incarceration of not less than 7 days, except that if the person failed to submit to a test at the request of a law enforcement officer, a period of incarceration of not less than 12 days;
(3) A court-ordered suspension of a driver's license for a period of 18 months; and
(4) In accordance with section 2416, a court-ordered suspension of the person's right to register a motor vehicle[.]

**4.** Although DiPietro did not challenge the administrative suspension until more than two

years after the Secretary of State mailed him a notice of the six-year suspension, the Secretary of State did not challenge the timeliness of DiPietro's appeal, because the Secretary of State acknowledged that at the time of the suspension, it failed to notify DiPietro of his right to request a hearing pursuant to 29–A M.R.S.A. § 2482(1), (2)(C) (Supp.2001), which provides the following:

1. Notification by Secretary of State. Upon determining that a person is subject to license suspension or revocation, the Secretary of State shall immediately notify the person, in writing, of the license suspension or revocation.
. . . .
2. Notice contents. The notice must clearly state:
. . . .
C. If the suspension or revocation is imposed by an authority other than a court, the right of the person to request a hearing, the procedure for requesting a hearing and the date by which a request for a hearing must be made[.]

suspension imposed by the Secretary of State did not violate the double jeopardy provisions of the Maine and United States Constitutions, because the administrative suspension is remedial; and (3) the Secretary of State did not err in imposing the suspension without hearing because the issue upon which DiPietro opposed the suspension, equitable estoppel, was not one upon which the Secretary of State could grant relief. The court reserved its own judgment on the issue of equitable estoppel until it had conducted a hearing on that issue.

[¶ 6] After that hearing, the court found that DiPietro knew that procedures for suspension by the courts and the Secretary of State "[were] on separate tracks," because he had prior experience with license suspensions. In fact, DiPietro's privileges had been previously suspended eight times. The court found that neither the sentencing justice nor the District Attorney ever suggested that the court-imposed suspension would bind the Secretary of State. The court also found that, although the District Attorney's copy of DiPietro's driving record, available at the plea, did not list a second suspension for refusal, the record did indicate that DiPietro had one prior refusal. The court reasoned that this record, although not completely accurate, gave DiPietro and his counsel notice that he was already beyond his second OUI offense. Additionally, the

court found that the Secretary of State's initial letter stating that DiPietro was facing a 6–year suspension should have put Dipietro and his counsel "on inquiry that more than one prior OUI offense was involved." The court concluded that, based on both DiPietro's and his attorney's experience, (1) the actions of the court and the District Attorney could not bind the Secretary of State, and (2) it was not reasonable for DiPietro to rely on his 18–month court suspension as an indication of the Secretary of State's future actions. Accordingly, the court held that equitable estoppel did not apply to the instant case. This appeal followed.

## II. DISCUSSION

[¶ 7] DiPietro argues that the administrative suspension statute, 29–A M.R.S.A. § 2451,[5] not only instructs the Secretary of State to record the court's suspension, but it also bars imposition of a separate, longer administrative suspension. DiPietro misinterprets 29–A M.R.S.A. § 2451(3), which states that the Secretary of State "shall suspend the license of a person convicted of OUI" for the enumerated period. *See also* 29–A M.R.S.A. § 2411(5–B).[6]

[¶ 8] In *Benedix v. Secretary of State,* 603 A.2d 473 (Me.1992), we decided a similar issue. Benedix brought an 80C appeal when the Secretary of State increased his

---

5. Title 29–A M.R.S.A. § 2451(1), (3)(D) (1996) provides, in relevant part:

    1. Recording and notice by Secretary of State. On receipt of an attested copy of the court record of a suspension of a license for OUI, the Secretary of State shall immediately record the suspension and send written notice of the suspension to the person whose license has been suspended.

    . . . .

    3. Suspension period. Unless a longer period of suspension is otherwise provided by law and imposed by the court, the Secretary of State shall suspend the license of a

person convicted of OUI for the following minimum periods:

    . . . .

    D. Six years, if the person has 4 or more OUI offenses within a 10–year period.

6. Title 29–A M.R.S.A. § 2411(5–B) provides: "The Secretary of State may impose an additional period of suspension under 2451, subsection 3 or may extend a period of suspension until satisfaction of any conditions imposed pursuant to chapter 23, subchapter III, article 4."

license suspension from a 90–day court-ordered suspension to a one-year administrative suspension, after discovering that Benedix had been previously convicted of OUI within the then applicable 6–year period. *Id.* at 473–74. The Secretary of State relied on 29 M.R.S.A. § 1312–D(1) (Pamph.1991), *repealed and replaced by* P.L.1993, ch. 683, § A–1 (effective Jan. 1, 1995) (codified at 29–A M.R.S.A. § 2451) for authority to increase Benedix's suspension period.[7] *Benedix,* 603 A.2d at 473–74. We affirmed Benedix's extended suspension, noting that the Secretary of State had the power "to see to it that the suspension that is statutorily mandated on the facts established in the records of his office is in fact imposed." *Id.* 474.

■ [¶ 9] DiPietro argues that because section 1312–D has been repealed, the Secretary of State's authority has also been rescinded. Despite DiPietro's assertions, there is no language in former section 1312–D(1) that is absent from sections 2451(3) and 2411 that suggests that the Secretary of State's mandate to impose minimum suspensions, now located in section 2451(3)(A)-(D), has been withdrawn. The recodification of the motor vehicle laws did not alter the law stated in *Benedix.* Therefore, the Secretary of State had the authority to impose the six-year suspension on DiPietro, although the court imposed an 18–month suspension at the time of the plea.

[¶ 10] DiPietro also argues that the administrative license suspension imposed by the Secretary of State is a multiple punishment that violates the double jeopardy provisions of the Maine[8] and United States Constitutions.[9] DiPietro's argument misconstrues the nature of a license suspension.

■ [¶ 11] Administrative license suspensions are remedial, not punitive, in character. *State v. Savard,* 659 A.2d 1265, 1268 (Me.1995). Like a professional licensee, a driver's right to use his or her license is conditioned on the individual's observance of proper operating standards. *Id.* Title 29–A M.R.S.A. § 2453(1)(A)-(B) (1996) states that the purpose of administrative suspensions for excessive blood-alcohol is "[t]o provide maximum safety for all persons who travel on or otherwise use the public ways; and … [t]o remove quickly from public ways those persons who have shown themselves to be a safety hazard by operating a motor vehicle with an excessive blood-alcohol level." This purpose is accomplished by post-conviction as well as pre-conviction administrative suspensions. The safety concern does not disappear when a driver has been sentenced by the court, particularly if the court-imposed suspension is less than required by 29–A M.R.S.A. §§ 2411(5) and 2451(3) because the court acted on an incomplete driving record.

---

7. Title 29 M.R.S.A. § 1312–D(1) provided, in relevant part:

   On receipt of an attested copy of the court record of a suspension of a person's license … or of a conviction under section 1312–B, the Secretary of State shall immediately record the suspension and shall send written notice of the suspension of the court to the person suspended. If the court fails to suspend the license … of any person convicted under section 1312–B, … the Secretary of State shall suspend "[the license]"

   for the period specified in section 1312–B
   . . . .

8. The double jeopardy clause of the Maine Constitution provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or limb." ME. CONST. art. I, § 8.

9. The double jeopardy clause of the United States Constitution provides that "[n]o person shall … be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

■ [¶ 12] DiPietro also argues that the Secretary of State's suspension of his driving privileges without a hearing violated his due process rights. DiPietro does not, however, challenge the number of prior OUI offenses indicated on his record. DiPietro was not entitled to a hearing on the equitable estoppel issue because the Secretary of State did not have the discretionary jurisdiction to consider DiPietro's claims of equitable estoppel. Accordingly, DiPietro's due process rights were not violated. *See Berry v. Bd. of Trs., Maine State Ret. Sys.*, 663 A.2d 14, 19 (Me.1995) (holding that Board did not have equitable jurisdiction to apply the doctrine of equitable estoppel to its own decisions).

[¶ 13] Finally, DiPietro argues that the Secretary of State should be equitably estopped from asserting that the 1997 OUI was anything other than a second offense because the District Attorney misled DiPietro into believing that it was his second offense and that his license would not be suspended for any period longer than the suspension imposed by the court.

■ [¶ 14] "Estoppel bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue." *Anderson v. Comm'r of Dep't of Human Servs.*, 489 A.2d 1094, 1099 (Me.1985). That reliance must be reasonable. *See Roberts v. Maine Bonding & Cas. Co.*, 404 A.2d 238, 241 (Me.1979). The burden rests on DiPietro to demonstrate that he "justifiably relied upon affirmative misleading conduct of [a] . . . governmental representative and was induced to his detriment to do an act that he would not otherwise have done." *Koren v. Sec'y of State*, 574 A.2d 895, 897 (Me.1990); *accord Mathieu v. Comm'r of Human Servs.*, 562 A.2d 686, 689 (Me.1989); *Roberts*, 404 A.2d at 241.

■ [¶ 15] Because there is no evidence in the record that either the sentencing court or the District Attorney made any affirmative misrepresentations to either DiPietro or his counsel, and DiPietro and his counsel had notice from the Secretary of State's October 18, 1996, letter that DiPietro was facing a 6–year suspension at the administrative level, equitable estoppel does not bar the Secretary of State from asserting that DiPietro had three prior OUI offenses. Any reliance that DiPietro and his plea counsel placed on the court-imposed suspension was not reasonable in light of the notices they received and the experience they each had.

The entry is:

Judgment affirmed.