STATE OF MAINE                                SUPERIOR COURT
CUMBERLAND, SS.                               CIVIL ACTION
                                              DOCKET, JO. AP-02-53
                                              TEL - CUM - 6/2/2003

DOUGLAS A. BELL,

                    Petitioner

vs.                                           DECISION AND ORDER

SECRETARY OF STATE,              DONALD L. GARBRECHT
BUREAU OF MOTOR VEHICLES,            LAW LIBRARY

                    Respondent        JUN 2003

STATE OF MAINE CUMBERLAND, SS. CLERK'S OFFICE 2003 JUN -2 A 3

This matter is before the court on the appeal of the petitioner

Douglas Bell from the decision of a hearing examiner upholding the

decision of the respondent Secretary of State, Bureau of Motor Vehicles

(BMV) revoking the petitioner's driver's license based upon a

determination that he was an habitual offender.

Preliminarily, the petitioner has moved to strike certain documents

attached to the respondent's memorandum of law because they were not

part of the administrative record. In this appeal, the court's review is

limited to the record before the agency upon which the agency decision

was based. 5 M.R.S.A. § 11006 (1). The court agrees with the petitioner

that the challenged documents were not part of the record before the

hearing examiner. Accordingly, the motion to strike is granted.

BACKGROUND

On March 3, 1995, the petitioner's license was administratively

suspended as the result of a dishonored check given by him to the

Secretary of State. The petitioner cured the dishonor on March 25, 1995,

1

after the administrative suspension went into effect, but did not pay the license reinstatement fee. Accordingly, his license remained under suspension.

On January 26, 1998, the petitioner was charged with Operating After Suspension (OAS) based upon the "dishonored check" suspension ("First OAS Charge"). On May 12, 1998, the petitioner failed to appear at court on the First OAS Charge and his license was suspended by the court for that reason. On February 16, 2000, the petitioner was again charged with OAS based upon the "dishonored check" and the "failure to appear" suspensions ("Second OAS Charge"). On March 21, 2000, his license was restored as to the court ordered suspension, but not as to the administrative suspension. Thus, his license remained under suspension.

On May 2, 2000, the petitioner was convicted of the Second OAS Charge following his plea of guilty. This conviction was based upon the "dishonored check" and the "failure to appear" suspensions and resulted in the imposition of an administrative suspension of the petitioner's license by BMV on June 1, 2000 (First OAS Administrative Suspension).

On July 25, 2000, the petitioner was convicted of the First OAS Charge. This conviction was based upon the "dishonored check" suspension and resulted in the imposition of another administrative suspension by BMV on September 11, 2000 (Second OAS Administrative Suspension).

On April 25, 2002, the petitioner was charged for the third time with OAS based upon the "dishonored check" suspension and the First

2

and Second OAS Administrative Suspensions ("Third OAS Charge"). On May 7, 2002, his license was restored with respect to the OAS Administrative Suspensions, but not as to the "dishonored check" suspension.

On July 11, 2002, John Sweeney, a legal assistant to the petitioner's attorney, contacted BMV and asked "what effect a new conviction for [the Third OAS Charge] would have on Mr. Bell's license". *See* Petition, Exh. B, Affidavit John D. Sweeney ¶ 3. The legal assistant reports that he was told by an unidentified BMV representative that the petitioner's license would be suspended for 60 days, but "he would not be classified as an habitual offender". *Id.* On July 16, 2002, the petitioner plead guilty to the Third OAS Charge.

On August 14, 2002, BMV sent a notice to the petitioner advising him that, as a result of the third OAS conviction, he was declared to be an habitual offender and his license was revoked for an indefinite period beginning August 24, 2002. 29-A M.R.S.A. § 2551 (2003). The notice cited four driving offenses, including the three OAS convictions, that resulted in his habitual offender status. On August 20, 2002, the petitioner's attorney timely requested an administrative hearing to determine (i) whether the petitioner was the same person cited in the notice as having been convicted of the offenses, and (ii) whether his driving record brought him within the definition of an habitual offender. A hearing was held on October 28, 1997 and the hearing examiner upheld BMV's determination that the petitioner was an habitual offender and the revocation of his license.

3

The issue on appeal is whether the petitioner was properly determined to be an habitual offender within the meaning of 29-A M.R.S.A. § 2551(4)(B), which provides that OAS convictions may not be counted for determining habitual offender status "when the suspension is based upon a failure to appear in court or to pay a fine". The hearing examiner concluded that the petitioner's OAS convictions on May 2, 2000, July 25, 2000, and July 16, 2002 qualified as predicate countable offenses.[1]

The petitioner counters that all of the convictions should not be counted because his administrative suspension for issuing a dishonored check to the Secretary of State is sufficiently similar to a court ordered suspension for failing to pay a fine to the court. He also argues that, even if the convictions are countable, BMV is estopped from classifying him as an habitual offender because of the erroneous information given to his attorney's legal assistant.

## DISCUSSION

Any party aggrieved by a final agency action is entitled to judicial review in the Superior Court. *See* M.R. Civ. P. 80C(a). "The court shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S.A. § 11007 (3). "The standard of review is limited to whether the governmental agency abused its discretion, committed an error of law, or

---

[1] It is noted that the May 2, 2000, conviction for the Second OAS Charge was based on two separate suspensions — one related to the "dishonored check" and the other to the petitioner's "failure to appear in court". The latter suspension, which is clearly not "countable" for determining whether a person is an habitual offender, was not included by the hearing examiner in her decision. 29-A M.R.S.A. § 2551(4)(B).

4

made findings not supported by substantial evidence in the record." *Seider v. Board of Examiners of Psychologists*, 2000 ME 206, P8, 762 A.2d 551, 555 (Me. 2000) (quotation and citation omitted). "The party seeking review of agency action has the burden of proof to show that the decision of the agency is not supported by competent evidence. *Greely v. Commissioner, Dep't of Human Servs.*, 2000 ME 56, ¶ 9, 748 A.2d 472.

(a)     Determination of Habitual Offender Status

The petitioner does not dispute that he was convicted of OAS in 1998, 2000, and 2002, and that evidence of these convictions was properly before the hearing examiner. However, he argues that the conduct resulting in his 1995 administrative suspension is not a proper consideration for determining his habitual offender status. The petitioner's argument is premised on an interpretation of 29-A M.R.S.A. § 2551(4)(B) that the "failure to pay a fine" to the court includes by implication the issuance of a "bad check" to the Secretary of State.

The hearing examiner upheld BMV's contrary interpretation and reasoned that the statute expressly excludes OAS convictions based on the failure to pay a fine to the court and that, if the legislature intended to also exclude those based on "dishonored checks" to the Secretary of State, it would have done so. "The administrative agency's interpretation of a statute administered by it, while not conclusive or binding on [the] court, will be given great deference and should be upheld unless the statute plainly compels a contrary result." *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013 (internal quotations omitted);

5

see also, *Wood v. Superintendent of Insurance*, 638 A.2d 67, 70 (Me. 1994).

Section 2551(4)(B) does not "plainly compel" a contrary result. It specifically includes the "failure to pay a fine" in the enumeration of excluded OAS convictions, but is silent as to administrative suspensions based upon dishonored checks. It is a well-settled rule of statutory interpretation that the express mention of one concept implies the exclusion of others not listed. *Wescott v. Allstate Ins.*, 397 A.2d 156, 169 (Me. 1979) ("[t]he maxim — *expressio unius est exclusio alterius* — is well recognized in Maine as in other states"); *Musk v. Nelson*, 647 A.2d 1198, 1200-01 (Me. 1994) (statute provides a single exception and implicitly denies the availability of any other).

Although the nature of the transgressions associated with the issuance of a bad check to the Secretary of State and the failure to pay a fine to the court are similar in that they are both fiscally based, the plain language of the statute only applies to the latter. Thus, the court upholds the hearing examiner's determination that the petitioner's three OAS convictions are "countable" in the habitual offender analysis.

(b)     Equitable Estoppel

The court is also not persuaded by the petitioner's argument that BMV should be estopped from enforcing 29-A M.R.S.A. § 2551 because a BMV representative may have given erroneous information to legal assistant Sweeney. This issue was not raised at the administrative hearing and, therefore, is not preserved for appeal. *Powell v. Sec'y of State*, 614 A.2d 1303, (Me. 1992) (holding that because the petitioner did

not raise the issue of "fair play" at the administrative level he had not preserved the issue for purposes of appeal). *See also New England Whitewater, Inc. v. Dept. of Inland Fisheries & Wildlife*, 550 A.2d 56, 60-61 (Me. 1988).

Estoppel bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue. *See DiPietro v. Secretary of State*, 2002 ME 114, ¶ 14, 802 A.2d 399, 404. The reliance must be reasonable. The burden rests on [the petitioner] to demonstrate that he justifiably relied upon affirmative misleading conduct of a . . . governmental representative and was induced to his detriment to do an act that he would not otherwise have done." *Id.* (quotations and citations omitted). In an appropriate case, equitable estoppel may be invoked against a governmental agency. Whether a governmental agency should be equitably estopped depends on the totality of the circumstances, including the nature of the agency and governmental function it performs.

Even if the issue is properly before the court, the court does not accept the petitioner's estoppel argument. Accepting for the sake of this analysis that there was a conversation between legal assistant Sweeney and an unidentified BMV representative during which erroneous information was given to Sweeney, there is no indication on this record that the misinformation rose to the level of "affirmative misleading conduct". *Id.* There is nothing to suggest that it was anything other than a simple mistake. Even if it could be construed as "affirmative misleading conduct", there is insufficient record evidence that, but for

7

the erroneous information given to Sweeney by BMV, the petitioner would have acted any differently — that is, he would not have plead guilty — or that the "detriment" would not have occurred regardless — that is, he would not have been convicted. *Id.*

## DECISION

Based upon the foregoing, and pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry is

Petitioner's motion to strike documents appended to Respondents Memorandum of Law is GRANTED; and

Decision of Hearing Officer affirming decision of Respondent Secretary of State, Bureau of Motor Vehicles classifying Petitioner as an habitual offender and revoking Petitioner's license for an indefinite period is AFFIRMED.

Dated: May 30, 2003

_____
Justice, Superior Court

Date Filed __October 11, 02__ ___CUMBERLAND___ Docket No. ___AP-02-53___
County

Action __80C APPEAL__

DEPARTMENT OF THE SECRETARY OF
STATE, BUREAU OF MOTOR VEHICLES

DOUGLAS A. BELL

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| GENE R. LIBBY, ESQ.<br>P.O. BOX 147<br>KENNEBUNK, MAINE  04043<br>985-7193 | JOSEPH WANNEMACHER, AAG<br>DEPARTMENT OF THE ATTORNEY GENERAL<br>6 STATE HOUSE STATION<br>AUGUSTA, MAINE  04333-0006<br>626-8800 |

| Date of Entry | |
|---|---|
| 2002<br>Oct. 11 | Received 10-11-02:<br>Summary Sheet filed. |
| "       " | Petition for Review of Final Agency Action Pursuant to M.R.Civ.P 80C and 5 M.R.S.A. @11001 et seq. with attached exhibits A & B filed. |
| "       " | Received 10-30-02:<br>Letter from Joseph Wannemacher, AAG entering his appearance for the Respondent and that a certified copy of the complete record under review will be sent filed. |
| Nov. 6 | Received 11-6-02.<br>Record with tape filed. |
| "  " | On 11-6-02.<br>Briefing Schedule Mailed. Petitioner' Brief due 12-16-02 |
| Dec. 17 | Received 12-16-02:<br>Petitioner's Motion for Enlargement of Time to File Brief filed. |
| Dec. 17 | Received 12-16-02:<br>Order filed. (Humphrey, J.).<br>The court finds that Petitioner's motion was filed before the expiration of the time to file his  brief and that he has shown cause for an enlargement of time. Moreover, the Respondent does not oppose Petitioner's motion. Therefore, the motion is GRANTED. It is hereby ORDERED that Petitioner shal have up to and including December 30, 2002 to file  his brief.<br>On 12-16-02 Copies mailed to Joseph Wannemacher, AAG and Gene Libby, Esq. |
| Dec. 31 | Received 12-30-02.<br>Petitioner's brief filed. |
| 2003<br>Feb. 5 | Received 02-04-03.<br>State's Memorandum of Law withattachments field. |