2007 ME 103

**Jeanne NICHOLS**

v.

**S.D. WARREN/SAPPI et al.**

Supreme Judicial Court of Maine.

Argued: April 9, 2007.

Decided: Aug. 7, 2007.

Wayne Whitney (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, Topsham, for the appellant.

Thomas Quartararo, Cara A. Lovejoy (orally), Robinson, Kriger & McCallum, Portland, for the appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] Jeanne Nichols appeals from a decision of a Workers' Compensation Board hearing officer (*Greene, HO*) granting the employer's petition for determination of offset. The hearing officer concluded that a lump sum payment that Nichols received pursuant to a permanent and total disability feature in her employer-funded group insurance policy constitutes a payment "under a disability insurance policy" subject to coordination under 39-A M.R.S. § 221(3)(A)(2) (2006). Nichols contends

that, because the payment was made pursuant to a life insurance policy, it is not subject to coordination. We affirm the hearing officer's decision.

## I. BACKGROUND

[¶ 2] Jeanne Nichols sustained a work-related injury to her cervical spine while working for S.D. Warren in 1999. She returned to work and received varying rates of incapacity benefits until February of 2002, when she stopped working. From then on, except for a brief period when Nichols attempted to return to work, S.D. Warren voluntarily paid total incapacity benefits.

[¶ 3] Effective January 1, 2000, S.D. Warren provided a group insurance policy for its full-time employees that is described in the policy's summary of coverage as being a "welfare plan." S.D. Warren paid the full premium on the policy. In addition to a life insurance benefit that would be paid in the event of death, the policy contains certain non-life insurance features, including an "accelerated death benefit," which allows the policy holder to cash out her life insurance in the event she is deemed to be terminally ill; "personal loss" coverage, which provides a benefit when the policyholder suffers the loss of a body part or paralysis as a result of an accident; and a "coma benefit." The policy also has a "Permanent and Total Disability Feature (For Employees Who Become Disabled Before Age 60)." An employee is eligible for this benefit if disease or injury prevents her from working at her job or any other job for pay or profit.[1] The amount of the benefit is

---

1. The specific language of the policy provides, in relevant part:

    If you become permanently and totally disabled, you may be eligible for a Permanent

    Disability Benefit. No premium payments will be required from your Employer.

    You are permanently and totally disabled only if:

equal to the amount of life insurance in force at the time of the disability, which in this case is $58,000. This coverage ceases when employment ceases, but coverage may continue for twelve months after an employee goes out of work due to illness or injury.

[¶ 4] On February 24, 2003, Nichols applied for benefits pursuant to the policy's permanent and total disability feature. She was fifty-three years old at the time. She was determined eligible based on a finding that she was totally disabled under the policy criteria, and she received a lump sum payment of $58,000 on April 23, 2003. S.D. Warren continued to pay total incapacity benefits to Nichols.

[¶ 5] On February 23, 2005, S.D. Warren filed a petition for determination of offset based on Nichols's receipt of the $58,000 permanent and total disability benefit. The hearing officer determined that the benefit was paid under a disability insurance policy within the meaning of 39–A M.R.S. § 221 (2006), and that the employer "is presently entitled to a holiday against future payments of incapacity benefits until those future benefits to which the employee may be entitled exceed $58,000."

[¶ 6] Nichols filed a petition for additional findings of fact and conclusions of law and proposed findings. The hearing officer issued additional findings, but did not alter his decision. Nichols sought appellate review, which we granted. In addition, the hearing officer has requested permission to correct the decision so that it states that the employer is entitled to a holiday from payment of future benefits until those benefits exceed the *after-tax* portion of the $58,000 payment. Neither party opposes the request.

• Either disease or injury stops you from working at:
  your own job; or

## II. DISCUSSION

[¶ 7] At issue is whether the coordination of benefits provision in the Workers' Compensation Act, 39–A M.R.S. § 221(3)(A)(2), requires a reduction of Nichols's benefits by the amount paid to her pursuant to the disability feature in the group insurance policy provided by S.D. Warren. Nichols contends that the payment she received is not a payment made pursuant to a "disability insurance policy" because the group policy is primarily a life insurance policy. She reasons that the purpose of the group insurance policy is to provide coverage in the event of death, not wage continuation during disability. The conversion option, she argues, does not change the nature of the underlying policy.

[¶ 8] In construing a provision of the Workers' Compensation Act, our purpose is to give effect to the legislative intent. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). In so doing, we first look to the plain meaning of the statutory language, and construe that language to avoid absurd, illogical, or inconsistent results. *Id.* If the statutory language is ambiguous, we look beyond the plain meaning and examine other indicia of legislative intent, including legislative history. *Id.*

[¶ 9] Decisions of the Board interpreting the Workers' Compensation Act are ordinarily "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Id.* (quotation marks omitted). In cases such as this, however, where hearing officers "are not of one view" as to how a

  any other job for pay or profit;
  and it must continue to stop you, for life, from working at any reasonable job.

provision should be interpreted and where the full Board has not undertaken appellate review,[2] "we are left with the language of the statute and history." *Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 588 (Me.1996).

[¶ 10] We first examine the plain language of the statute. Title 39–A M.R.S. § 221 authorizes an employer or insurer to coordinate workers' compensation benefits with payments made pursuant to "a disability insurance policy provided by the employer." 39–A M.R.S. § 221(1)(B) (2006).[3] Coordination results in the employee's weekly benefits being reduced by the "after-tax amount of the payments received or being received ... under a dis-ability insurance policy." *Id.* § 221(3)(A)(2).[4]

[¶ 11] Neither the Workers' Compensation Act nor the Maine Insurance Code contains a definition of "disability insurance policy." Disability insurance is commonly defined as "[c]overage purchased to protect a person from a loss of income during a period of incapacity for work." BLACK'S LAW DICTIONARY 816 (8th ed. 2004). Generally, disability insurance protects against the "inability of an individual to earn the salary or wages to which he or she was accustomed" due to poor health.[5] 1 LEE R. RUSS AND THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 1:65 at 1–87 (1997).

**2.** Nichols contends that the hearing officer in this case committed error by disregarding rulings in two prior decisions involving the same or similar group insurance policy in which a different hearing officer concluded that lump sum payments pursuant to the disability feature of the policy should not be offset against the employee's workers' compensation benefits. Whether the hearing officer in this case was bound to rule consistently with prior hearing officer decisions is a matter for the hearing officer to decide. When conflicting hearing officer decisions have been issued, however, it is within our purview to establish an interpretation of the law that resolves the conflict. *See* M.R.App. P. 23(b)(2)(A).

**3.** Title 39–A M.R.S. § 221(1)(B) (2006) provides:

> **1. Application.** This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 with respect to the same time period for which the employee is also receiving or has received payments for:
>
> ....
>
> **B.** Payments under a self-insurance plan, a wage continuation plan or a disability insurance policy provided by the employer.

**4.** Title 39–A M.R.S. § 221(3)(A)(2) (2006) provides:

> **3. Coordination of benefits.** Benefit payments subject to this section must be reduced in accordance with the following provisions.
>
> **A.** The employer's obligation to pay or cause to be paid weekly benefits ... is reduced by the following amounts:
>
> ....
>
> **(2)** The after-tax amount of the payments received or being received under a self-insurance plan or a wage continuation plan or under a disability insurance policy provided by the same employer from whom benefits under section 212 or 213 are received if the employee did not contribute directly to the plan or to the payment of premiums regarding the disability insurance policy.

**5.** Disability insurance is sometimes referred to as "disability income insurance," and may provide "periodic payments to replace income lost when the insured is unable to work as a result of sickness or injury." INT'L RISK MGMT. INST., GLOSSARY OF INS. & RISK MGMT. TERMS (10th ed. 2006). Disability insurance underwritten with group life insurance, however, often provides for a lump sum payment upon disability in the face amount of the insurance policy, instead of periodic payments in a percentage of the insured's income. *See* 1 Eric Mills Holmes & Mark S. RHODES, HOLMES'S APPLEMAN ON INSURANCE, 2D § 1.27 at 139 (1996). The theory is that insured employees would be paid the life insurance benefit when they "met an economic death." *Id.*

[¶ 12] The group insurance policy in issue combines several types of insurance, including disability insurance, into a single policy. Classifying an insurance policy has become problematic due to the advent of package policies that combine aspects of several discrete lines of insurance into a single policy. *See* 1 ERIC MILLS HOLMES & MARK S. RHODES, HOLMES'S APPLEMAN ON INSURANCE, 2D § 1.25 at 123 (1996). For example, the Maine Insurance Code defines "life insurance" as "insurance on human lives," but also defines the "transaction of life insurance" to include:

> the granting[ of] endowment benefits, additional benefits in event of death or dismemberment by accident or accidental means, *additional benefits in event of the insured's disability,* and optional modes of settlement of proceeds of life insurance.

24–A M.R.S. § 702 (2006) (emphasis added). Disability coverage may also be provided in a health insurance policy. *See, e.g.,* 24–A M.R.S. § 704(1) (2006). The definitions of different types of insurance coverage are not mutually exclusive, and "the inclusion of such coverage within one definition shall not exclude it as to any other kind of insurance within the definition of which such coverage is likewise reasonably includable." 24–A M.R.S. § 701 (2006).

[¶ 13] The payment that Nichols received was payable upon disability and, even though paid in a lump sum, was designed to replace income in the event of her inability to work. Accordingly, Nichols received a disability insurance payment. This does not necessarily end our inquiry, however, because the statute specifically provides for the coordination of benefits when a payment is made pursuant to "a disability insurance policy," and the payment in this case was made pursuant to a policy providing multiple coverages.

[¶ 14] The hearing officer in the present case reasoned:

> [T]he group insurance policy in question is both a life insurance policy and a disability insurance policy. The "Permanent Disability Benefit" received by the employee on April 23, 2003 was under the disability component of that policy and, therefore, constitutes a payment "under a disability insurance policy" within the meaning of section 221.

[¶ 15] The hearing officer's reasoning comports with common sense. There is no meaningful basis on which to distinguish the lump sum payment Nichols received as being something other than a payment pursuant to a disability insurance policy. We conclude that the plain meaning of the term "disability insurance policy" includes a payment pursuant to a disability feature in a policy that provides multiple coverages. Accordingly, S.D. Warren is entitled to take the offset.

The entry is:

The judgment of the hearing officer of the Workers' Compensation Board is affirmed. The case is remanded to the Board for correction, limiting the offset to the after-tax value of the disability payment.