2010 ME 87

**John BAKER**

v.

**S.D. WARREN COMPANY et al.**

Supreme Judicial Court of Maine.

Argued: June 15, 2010.
Decided: Aug. 26, 2010.

Richard D. Tucker, Esq. (orally), Tucker Law Group, Bangor, ME, for S.D. Warren Company.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., David E. Hirtle, Esq., MacAdam Law Offices, P.A., Portland, ME, for John Baker.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] S.D. Warren Company appeals from a decision of a Workers' Compensation Board hearing officer (*Collier, HO*) granting John Baker's petitions for restoration and awarding him ongoing total incapacity benefits subject to allowable offsets, including an offset for a lump sum disability payment. When calculating the offset, the hearing officer applied a newly promulgated rule, Me. W.C.B. Rule, ch. 9, § 2 (effective Sept. 16, 2009), which requires that such offsets be taken over the employee's life expectancy. S.D. Warren challenges the validity of Rule, ch. 9, § 2

on the grounds that it is ultra vires.[1] We affirm the hearing officer's decision, concluding that the Board did not exceed its authority in promulgating the rule and that the rule does not directly conflict with the applicable coordination of benefits provision, 39 M.R.S.A. § 62–B (1989).[2]

## I. BACKGROUND

[¶ 2] John Baker, sixty-three, worked at S.D. Warren from 1968 until 2005, mainly in the shipping department. He suffered three work-related injuries: (1) an injury in 1986 to his low back and foot, (2) one in 1991 to his neck and low back, and (3) one in 1997 to his neck that also involved a vertigo condition. He was out of work in 2005 and 2006 due to nonwork-related conditions. He was cleared to return to work, but in July of 2006, he aggravated his work-related neck and back injuries while doing yard work. Baker's treating physician, who diagnosed him with chronic right cervical radiculopathy at C6–7 and chronic low back pain with right leg radiculopathy, recommended that he remain out of work due to the effects of the aggravated back and neck injuries.

[¶ 3] Baker retired from S.D. Warren and began receiving monthly pension benefits as of January 1, 2007. He also received a lump sum payment in the amount of $56,000 pursuant to a disability feature in an employer-provided life insurance policy.

[¶ 4] Baker filed petitions for restoration with respect to all three dates of injury. The hearing officer determined that Baker remains totally incapacitated as a result of the 1986 and 1991 back and neck injuries, and granted the petitions for those injuries, but also found that Baker no longer suffers the effects of the 1997 injury, and denied the petition for that injury. In addition, the hearing officer authorized the employer to offset the $56,000 disability payment against the workers' compensation benefits it was obligated to pay, pursuant to *Nichols v. S.D. Warren/Sappi*, 2007 ME 103, ¶¶ 13–15, 928 A.2d 732, 736. In *Nichols* we held, pursuant to 39–A M.R.S. § 221(3)(A)(2) (2009), that a lump sum payment made under a disability feature in an employer-provided life insurance policy is subject to coordination.[3] *Nichols*, 2007 ME 103, ¶¶ 10, 15, 928 A.2d at 736. The hearing officer ini-

---

1. S.D. Warren also contends that retroactive application of Me. W.C.B. Rule ch. 9, § 2 violates the due process and takings clauses of the United States and Maine Constitutions. Because these issues were not raised in the petition for appellate review, we do not address them here. *See Laskey v. S.D. Warren Co.*, 2001 ME 103, ¶ 31, 774 A.2d 358, 366.

2. Title 39 M.R.S.A. § 62–B (1989) has been repealed and replaced by P.L. 1991, ch. 885, §§ A–7, A–8 (effective Jan. 1, 1993) (codified at 39–A M.R.S. § 221 (2009)). For injuries incurred before January 1, 1993, the provisions of the current Act apply, except that the applicable provisions of former title 39 apply in place of 39–A M.R.S. §§ 211, 212, 213, 214, 215, 221 (the coordination of benefits provision), 306, and 325. P.L. 1991, ch. 885, § A–10. Section 62–B, therefore, governs the 1986 and 1991 injuries.

3. Around the time we granted the petition for appellate review in this case, the Legislature effectively nullified certain aspects of *Nichols v. S.D. Warren/Sappi*, 2007 ME 103, 928 A.2d 732. It amended 39–A M.R.S. § 221 (2009) by making exempt from coordination lump sum disability payments paid pursuant to a disability feature in a life insurance policy that had been collectively bargained. P.L. 2009, ch. 521, § 1 (effective July 12, 2010) (to be codified at 39–A M.R.S. § 221(2)). The amendment has retroactive application to all pending cases, including those on appeal. P.L. 2009, ch. 521, § 2. The briefs and arguments of the parties do not address whether this amendment applies to individuals receiving benefits under 39 M.R.S.A. § 62–B, and we do not reach the issue on this appeal.

tially authorized calculating the offset by determining the after-tax value of the $56,000 payment, $44,296.72, and allowing the employer a payment holiday until that sum was reached.

[¶ 5] Baker filed a motion for additional findings of fact and conclusions of law. While the motion was pending, the Workers' Compensation Board promulgated Rule, ch. 9, § 2. Although it became effective on September 16, 2009, the rule was given retroactive application to all pending cases, including those on appeal. Rule, ch. 9, § 2(C). The rule establishes the method for calculating and applying offsets governed by 39–A M.R.S. § 221 when the amount being offset is distributed to the employee in a lump sum, requiring such offsets to be taken over the employee's life expectancy. Rule, ch. 9, § 2.

[¶ 6] The hearing officer granted the motion in part, and issued additional findings of fact and conclusions of law in which he directed that the offset be taken pursuant to the method prescribed in the new rule. That is, rather than allowing a payment holiday until the full, after-tax amount of the lump sum is reached, the offset would now be pro-rated over the employee's life expectancy of 20.2 years. This substantially reduced the amount of the weekly offset.

[¶ 7] S.D. Warren filed a petition for appellate review, which we granted pursuant to M.R.App. P. 23(c), and 39–A M.R.S. § 322(3) (2009).

## II. DISCUSSION

[¶ 8] S.D. Warren contends that Me. W.C.B. Rule, ch. 9, § 2 is ultra vires because the Board exceeded its statutory authority when promulgating the rule and because it conflicts with section 221 of title 39–A or section 62–B of title 39.[4]

Me. W.C.B. Rule, ch. 9, § 2 provides in pertinent part:

§ 2. Coordination of benefits pursuant to § 221(3).

. . . .

(B) When an employee receives a benefit that is intended to be paid over the employee's lifetime in a lump sum or a periodic payment for a permanent or lifetime condition paid over a period less than the employee's life expectancy pursuant to a plan or policy subject to § 221(1)(B) or (C), the amount of the reduction to the employee's weekly benefits is calculated by:

(1) determining the employee's life expectancy based on standard actuarial tables in weeks;

(2) determining a weekly benefit amount by dividing the lump sum amount by the number of weeks of life expectancy determined pursuant to sub-section B paragraph (1) of this section;

(3) converting the weekly benefit amount determined pursuant to sub-section B paragraph (2) of this section into an after-tax amount using the tables of average weekly wage and 80% of the after tax average weekly wage published by the Board pursuant to 39–A M.R.S. § 102(1); and,

---

4. We have not expressly decided whether we would consider a payment pursuant to a "disability insurance plan" under 39 M.R.S.A. § 62–B(2)(B) to include a payment pursuant to a disability feature in a life insurance policy. The hearing officer implicitly found that the offset is authorized by the statute, and the parties do not challenge this finding. Accordingly, we interpret section 62–B to allow the offset. *Cf.* L.D. 2464, Statement of Fact, pt. A, at 214 (115th Legis. 1992) (stating that section 221 "allows coordination of benefits in a manner similar to the former Title 39, section 62–B").

(4) multiplying the applicable 80% of the after-tax amount by 1.25.

(C) This regulation applies retroactively to all pending cases including those on appeal.

[¶ 9] The Board derives its rulemaking authority from 39–A M.R.S. § 152(2) (2009), which provides:

2. **Rules.** Subject to any applicable requirements of the Maine Administrative Procedure Act, the board shall adopt rules to accomplish the purposes of this Act. Those rules may define terms, prescribe forms and make suitable orders of procedure to ensure the speedy, efficient, just and inexpensive disposition of all proceedings under this Act.

[¶ 10] S.D. Warren contends that section 152 does not give the Board rulemaking authority over how offsets should be taken; instead, it permits the Board only to "define terms, prescribe forms and make suitable orders of procedure." *Id.* We disagree. We have recognized a legislative intent to delegate broad authority to the Board to interpret the Act, either by rule or through its decision-making authority when the statutory language is ambiguous. *See Bridgeman v. S.D. Warren Co.,* 2005 ME 38, ¶ 11, 872 A.2d 961, 964–65; *Jasch v. Anchorage Inn,* 2002 ME 106, ¶ 9, 799 A.2d 1216, 1218; *see also Russell v. Russell's Appliance Serv.,* 2001 ME 32, ¶ 10 n. 3, 766 A.2d 67, 71. We have noted that " '[t]he Act reflects not so much a legislative intent to comprehensively address every workers' compensation issue in a detailed and specific way, but to commit some issues to a process in which the participants in the system, labor and management, can work out flexible and realistic solutions.' " *Russell,* 2001 ME 32, ¶ 10 n. 3, 766 A.2d at 71 (quoting *Bureau v.*

*Staffing Network, Inc.,* 678 A.2d 583, 588 n. 2 (Me.1996)). Accordingly, we give deference to Board rules interpreting the Act and have encouraged the Board to enact rules to fill in the "gray areas" that were intentionally left in the Act. *See, e.g., Bridgeman,* 2005 ME 38, ¶ 11, 872 A.2d at 964–65; *Russell,* 2001 ME 32, ¶ 10 n. 3, 766 A.2d at 71; *Bureau,* 678 A.2d at 588 n. 2.

■ [¶ 11] We previously noted that the coordination of benefits statute was "silent on the treatment of lump sum amounts and the Board ha[d] not promulgated a rule to cover this statutory vacuum." *Foley v. Verizon,* 2007 ME 128, ¶ 10, 931 A.2d 1058, 1061. Board Rule, ch. 9, § 2 appears to have been issued in response to this vacuum, in order to fill in the "gray area" regarding how lump sums should be treated when coordinated with workers' compensation benefits. Accordingly, the Board did not exceed its rulemaking authority when promulgating Rule, ch. 9, § 2.

[¶ 12] S.D. Warren also contends the rule is ultra vires because it conflicts with the coordination of benefits provision. The main thrust of S.D. Warren's argument is that the rule conflicts with the purposes of the statute, which it identifies as (1) ensuring minimum compensation to employees during periods of disability; (2) preventing double recovery of workers' compensation and other wage replacement benefits; and (3) saving costs to the workers' compensation system. *See Foley,* 2007 ME 128, ¶ 11, 931 A.2d at 1061. S.D. Warren also argues that, under the method prescribed by the rule, employers are unlikely to enjoy the full benefit of the offset, as intended by section 221, because that benefit is diluted when the offset must be taken over a longer period of time.[5]

---

**5.** This is particularly so, S.D. Warren asserts,    because the rule requires that life expectancy

[¶ 13] Board Rule, ch. 9, § 2 was promulgated to implement section 221, the coordination of benefits provision. Section 221 provides, in relevant part:

**1. Application.** This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 with respect to the same time period for which the employee is also receiving or has received payments for:

. . . .

**B.** Payments under a self-insurance plan, a wage continuation plan or a disability insurance policy provided by the employer;

. . . .

**3. Coordination of benefits.** Benefit payments subject to this section must be reduced in accordance with the following provisions.

**A.** The employer's obligation to pay or cause to be paid weekly benefits other than benefits under section 212, subsection 2 or 3 is reduced by the following amounts:

. . . .

(2) The after-tax amount of the payments received or being received under a self-insurance plan or a wage continuation plan or under a disability insurance policy provided by the same employer from whom benefits under section 212 or 213 are received if the employee did not contribute directly to the plan or to the payment of pre-

miums regarding the disability insurance policy. . . .

[¶ 14] Baker's 1986 and 1991 injuries are governed by 39 M.R.S.A. § 62–B, which authorizes a reduction of the employer's obligation to pay an employee's incapacity benefits by:

(2) The after tax amount of the payments received or being received under an employee benefit plan provided by the employer by whom benefits . . . are payable if the employee did not contribute directly to the plan; and

(3) The proportional amount, based upon the ratio of the employer's contributions to the total contributions, of the after tax amount of the payments received or being received by the employee under an employee benefit plan provided by the same employer by whom benefits . . . are payable if the employee did contribute directly to the plan.

39 M.R.S.A. § 62–B(3)(A). "Employee benefit plan" is defined as "a self-insurance disability plan, wage continuation plan, disability insurance plan and a pension or retirement plan which is funded or paid for by the employer in whole or in part." 39 M.R.S.A. § 62–B(2)(B).[6]

[¶ 15] We have struck down Board rules when they directly conflict with express statutory language. *See, e.g., Lydon v. Sprinkler Servs.,* 2004 ME 16, ¶¶ 12–15, 841 A.2d 793, 797–98 (striking down a board rule that would permit independent medical examinations by examiners who have performed exams on behalf of employers in the preceding fifty-two weeks

be based on standard actuarial tables, without reference to a rated age, which would take into account whether the employee suffers from any illness or injury. S.D. Warren concedes, however, that the Workers' Compensation Act does not address the rated-age issue.

6. While Rule, ch. 9, § 2 expressly applies to coordination of benefits pursuant to 39

M.R.S. § 221, we conclude that the Board intended that it likewise applies to coordination of benefits pursuant to 39 M.R.S.A. § 62–B. *See* L.D. 2464, Statement of Fact, pt. A, at 214 (115th Legis. 1992) (stating that the current coordination provision "allows coordination of benefits in a manner similar to the former Title 39, section 62–B.").

because the rule conflicted with statute); *Beaulieu v. Me. Med. Ctr.*, 675 A.2d 110, 111 (Me.1996) (holding a board rule on the inclusion of fringe benefits in the average weekly wage unenforceable because it was contrary to statute). Here, however, there is no direct conflict between the coordination of benefits statute and the rule. In some instances, employers may benefit less from coordination than they would if permitted to take a full payment holiday at the outset of the benefit period. The rule, however, does not foreclose the possibility that employers may eventually obtain the full benefit of the offset amount. The final result in each case will be determined by the length of entitlement to benefits and the employee's actual lifespan. The employee will not receive total benefits in excess of the amounts established by statute. Because the consequences of the new rule are not in conflict with the statute, and because the statute does not guarantee that the employer will be entitled to offset 100% of the wage replacement benefit in every case, we affirm the decision of the Workers Compensation Board hearing officer.[7]

The entry is:

The Workers' Compensation Board hearing officer's decision is affirmed.

---

7. S.D. Warren also contends that the hearing officer erred when finding that Baker continued to suffer incapacity from the 2006 aggravation of his work-related injuries after January 2007. Incapacity level, however, is a factual finding that we will not disturb. 39–A M.R.S. § 318 (2009).