2012 ME 62

**ESTATE OF Michael JOYCE** [1]

v.

**COMMERCIAL WELDING CO. et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2012.

Decided: May 3, 2012.

---

**1.** The Estate of Michael Joyce was substituted as a party after Michael Joyce's death.

Cathy S. Roberts, Esq., Elizabeth K. Peck, Esq. (orally), Thompson & Bowie, LLP, Portland, on the briefs, for appellants Commercial Welding Co. and Esis, Inc.

James J. MacAdam, Esq., Nathan A. Jury, Esq., and David E. Hirtle, Esq. (orally), MacAdam Jury, P.A., Portland, on the briefs, for appellee Estate of Michael Joyce.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ..

JABAR, J.

[¶ 1] Commercial Welding Co. appeals from a decision of a Workers' Compensation Board hearing officer (*Collier, HO*) awarding the estate of Michael Joyce (Estate) benefits on a petition for an award of compensation pursuant to the Occupational Disease Law, 39–A M.R.S. §§ 601–615 (2011), and ordering benefits paid to Mary Joyce, widow of Michael, on a petition for death benefits pursuant to 39–A M.R.S. § 215 (2011).[2] Commercial Welding also challenges the hearing officer's determinations that (1) it had not cured a previously established violation of the "fourteen-day rule," Me. W.C.B. Rule, ch. 1, § 1, because it had not paid interest on the required payment imposed for the violation, and (2) it was not permitted to offset the amount of the death benefits ordered to be paid to

---

**2.** The Workers' Compensation Act, 39–A M.R.S. §§ 101–909 (2011) has recently been substantially amended. P.L.2011, ch. 647 (effective in part Jan. 1, 2013). None of the amendments are applicable in this case.

Mary Joyce by the amount of the payment for the fourteen-day rule violation. We disagree with the hearing officer's decision that interest was due on the required payment to the Estate, but we agree with the hearing officer's decision that the required payment cannot be used to offset the death benefits ordered to be paid to Mary. Accordingly, we vacate the hearing officer's decision in part and affirm in part.

## I. FACTS

[¶ 2] Michael Joyce worked as a union laborer, longshoreman, and boilermaker from 1973 until 2004. He was frequently exposed to airborne asbestos fibers on the job, and rarely wore respiratory protection. His last documented exposure to airborne asbestos dust was in 1987 while working for Commercial Welding. *See* 39–A M.R.S. § 606 (2011). He died of lung cancer on September 16, 2008.

[¶ 3] Before his death, Michael Joyce filed a petition for award and for payment of medical and related services pursuant to the Occupational Disease Law, 39–A M.R.S. § 601–615. After his death, Michael's widow, Mary Joyce, filed a petition for death benefits pursuant to 39–A M.R.S. §§ 215, 614(7)(C) (2011).[3] Commercial Welding did not timely respond to Michael's petition for award, but did timely respond to Mary's petition for death benefits.

[¶ 4] The proceedings were bifurcated so that the hearing officer could first decide two threshold issues: (1) whether Michael had provided sufficient notice of the occupational disease claim pursuant to 39–A M.R.S. §§ 301, 607 (2011), and (2) whether the fourteen-day rule, Me. W.C.B.

Rule, ch. 1, § 1, applies to a claim under the Occupational Disease Law.

[¶ 5] In a 2009 decree, the hearing officer determined that Michael had provided adequate notice of his claim for compensation, and that the fourteen-day rule applies to claims brought pursuant to the Occupational Disease Law.

[¶ 6] On September 30, 2009, Commercial Welding paid Michael's Estate $61,763.98 as a required payment for the fourteen-day rule violation, and filed a Memorandum of Payment and Notice of Controversy. This amount represented total compensation from October 1, 2007, the date of Michael's incapacity, through September 30, 2009, the date of payment. The payment did not include any amount for interest.

[¶ 7] At a second hearing, the hearing officer considered the merits of the petitions for award, for death benefits, and for medical payments.[4] He granted the petition for award entitling Michael's estate to benefits for total incapacity for the period from October 1, 2007, the date of Michael's incapacity, to September 16, 2008, the date of Michael's death. The hearing officer also granted Mary's petition for death benefits amounting to 500 weeks of total compensation.

[¶ 8] The hearing officer further determined that Commercial Welding had not cured the fourteen-day rule violation because it had not yet paid the 10% interest on the payment pursuant to 39–A M.R.S. § 205(6) (2011) and Me. W.C.B. Rule, ch. 8, § 7. Because Commercial Welding had not yet cured the fourteen-day rule violation, the hearing officer ordered Commercial Welding to pay to the Estate total

---

3. Title 39–A M.R.S. § 614(7)(C) (2011) authorizes benefits payable pursuant to 39–A M.R.S. §§ 212, 213 and 215 for occupational disease claims.

4. The hearing officer also granted the petition for medical payments, but neither party challenges that award on appeal.

compensation plus interest at 10% from October 1, 2007, to the date of the order, April 6, 2010, and continuing until Commercial Welding paid its full liability.

[¶ 9] Commercial Welding filed a motion for additional findings of fact and conclusions of law, and the hearing officer responded by issuing additional findings and conclusions. He concluded that the employer may offset the amount of benefits it was ordered to pay to the Estate pursuant to the petition for award by the amount of the payment it made for its fourteen-day rule violation, but that the employer may not offset the amount of death benefits ordered to be paid to Mary pursuant to her petition for death benefits by the payment for the fourteen-day rule violation. The hearing officer reasoned that the fourteen-day rule violation occurred with respect to the petition for award filed by Michael, and that the claim for death benefits was a separate claim filed by Mary. The additional findings did not alter the original decision.

[¶ 10] Commercial Welding filed a petition for appellate review, which we granted pursuant to M.R.App. P. 23(c) and 39–A M.R.S. § 322(3) (2011).

## II. STANDARD OF REVIEW

■ [¶ 11] Determining whether interest must be paid on a payment for a fourteen-day rule violation involves interpretation of both statutory language and Board rules. "[W]e give deference to Board rules interpreting the Act and have encouraged the Board to enact rules to fill in the 'gray areas' that were intentionally left in the Act." *Baker v. S.D. Warren Co.*, 2010 ME 87, ¶ 10, 3 A.3d 380; *see also*

*Doucette v. Hallsmith/Sysco Food Servs., Inc.*, 2011 ME 68, ¶ 11, 21 A.3d 99; *Bridgeman v. S.D. Warren Co.*, 2005 ME 38, ¶ 11, 872 A.2d 961. However, the Court will defer to the Board only when there is no direct conflict between the Board rules and statutory language. *Jasch v. The Anchorage Inn*, 2002 ME 106, ¶ 10, 799 A.2d 1216.

■ [¶ 12] When construing a provision of the Workers' Compensation Act, our purpose is to give effect to the legislative intent. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). In so doing, we first look to the plain meaning of the statutory language, and "construe that language to avoid absurd, illogical or inconsistent results." *Id.* "If the statutory language is ambiguous, we then look beyond the plain meaning and examine other indicia of legislative intent, including its legislative history." *Id.* A statute is ambiguous if it is reasonably susceptible to different interpretations. *Peters v. O'Leary*, 2011 ME 106, ¶ 13, 30 A.3d 825. Decisions of the Board interpreting ambiguous provisions of the Workers' Compensation Act are ordinarily "entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Jordan*, 651 A.2d at 360 (quotation marks omitted).

## III. DISCUSSION

### A. "Fourteen–Day Rule" Violation

[¶ 13] The Maine Workers Compensation Board adopted Me. W.C.B. Rule, ch.1, § 1, requiring an employer who receives notice of a work-related injury to take certain steps within fourteen days.[5] The

---

5. Maine W.C.B. Rule, ch. 1, § 1 provides:
   1. Within 14 days of notice or knowledge of a claim for incapacity or death benefits for a work-related injury, the employer or insurer will:

   A. Accept the claim and file a Memorandum of Payment checking "Accepted" in Box 18; or
   B. Pay without prejudice and file a Memorandum of Payment checking "Voluntary

employer must either accept the claim, pay without prejudice, or deny the claim. If the employer fails to comply by not exercising any of these three options, it must pay the employee an amount equal to total benefits from the date of incapacity to the date of the payment.

[¶ 14] This rule was promulgated to implement 39–A M.R.S. § 205 (2011), which was adopted in 1992 with the wholesale reenactment of the Workers' Compensation Act. P.L.1991, ch. 885, § A–8 (effective Jan. 1, 1993). Section 205 was preceded by the controversial "early pay system," adopted in the 1980s, whereby the failure of an employer to file a notice of controversy within rigid statutory time frames created a "compensation payment scheme" in which the employer was deemed to have accepted the employee's claim of injury. *See* 39 M.R.S. § 51–B (1989), *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993); *see also Doucette*, 2011 ME 68, ¶ 16, 21 A.3d 99. The purpose of the early pay system was to encourage informal acceptance of claims and reduce attorney involvement. L.D. 1322, Statement of Fact (111th Legis.1983). We interpreted section 51–B to preclude late-filing employers from disputing that the injury was work related, and

to accept the claim at the level alleged by the employee. *See Wentworth v. Manpower Temp. Servs.*, 589 A.2d 934, 938 (Me.1991); *Stickles v. United Parcel Serv.*, 554 A.2d 1176, 1178–79 (Me.1989). The enactment of section 205 imposed a penalty for late payment, but did not preclude employers from disputing any aspect of the claim. *See Doucette*, 2011 ME 68, ¶ 17, 21 A.3d 99; *see also* 39–A M.R.S. § 205.

[¶ 15] Section 205 requires that employers and insurers pay incapacity benefits "within 14 days after the employer has notice or knowledge of the injury," and weekly thereafter. 39–A M.R.S. § 205(2). The statute also imposes daily penalties for failure to make timely payments of weekly compensation benefits, not to exceed $1500, and for late payments of compensation pursuant to an award, the statute imposes interest. *Id.* § 205(3), (6).

[¶ 16] The hearing officer in this case determined that interest is owed on a payment for a fourteen-day rule violation pursuant to 39–A M.R.S. § 205(6),[6] which provides:

> When weekly compensation is paid pursuant to an award, interest on the com-

---

Payment Pending Investigation" in Box 18; or

C. Deny the claim and file a Notice of Controversy.

2. If the employer fails to comply with the provisions of Rule 1.1, the employee must be paid total benefits, with credit for earnings and other statutory offsets, from the date of incapacity in accordance with 39–A M.R.S.A. Sec. 205(2) and in compliance with 39–A M.R.S.A. Sec. 204. The requirement for payment of benefits under this subsection automatically ceases upon the filing of a Notice of Controversy and the payment of any accrued benefits.

3. Payment under Section 1.2 requires the filing of a Memorandum of Payment.

4. Benefits paid under this section are indemnity payments and are credited to-

ward future benefits in the event that benefits are ordered or paid.

5. Failure to comply with the provisions of Rule 1.1 may also result in the imposition of penalties pursuant to 39–A M.R.S.A. Secs. 205(3), 359, and 360.

6. Title 39–A M.R.S. § 205(9)(F) (2011) also speaks to interest, to be paid on "benefits withheld," but does not apply to this case:

> If benefits have been discontinued or reduced pursuant to paragraph A or B and the board, after hearing, determines that benefits have been wrongfully withheld, the board shall order payment of all benefits withheld together with interest at the rate of 6% a year. The employer shall pay this amount within 10 days of the order.

pensation must be paid at the rate of 10% per annum from the date each payment was due, until paid.

[¶ 17] Maine W.C.B. Board Rule, ch. 8, § 7 also governs the payment of interest. It provides:

Interest on awards of compensation must be calculated by the employer and paid to the employee pursuant to 39–A M.R.S.A. § 205(6). Interest must be paid to the employee even if there is no express language in the decision of the mediator or hearing officer ordering such payment. Interest must be calculated using the formulae and Table contained in Appendix I.

[¶ 18] At issue, therefore, is whether a payment for a fourteen-day rule violation constitutes "compensation ... paid pursuant to an award." 39–A M.R.S. § 205(6). We noted in *Guiggey v. Great Northern Paper,* that "the assessment of pre-decree interest serves two purposes in the workers' compensation context: (1) to compensate the employee for delay in the receipt of benefits; and (2) to discourage employers from contesting valid workers' compensation claims." 1997 ME 232, ¶ 7, 704 A.2d 375 (holding that section 205(6) requires payment of pre-decree interest).

[¶ 19] In *Jasch v. The Anchorage Inn,* we addressed whether payments pursuant to a consent decree or a mediated agreement constituted an award for which interest was due. 2002 ME 106, ¶¶ 8, 16, 799 A.2d 1216. We stated:

The term "award" is not defined in the Act. Traditionally, a consent decree is memorialized by a Board order, signed by a hearing officer, and is accorded the same finality and res judicata effect as any other decree or award of a hearing officer. Moreover, we have occasionally referred to voluntary agreements in our decisions as "awards," or "settlement awards," or "lump sum awards."

*Id.* ¶ 12 (citations omitted). We concluded that "a consent decree, signed by a hearing officer and issued through the auspices of the Board, is an 'award' for purposes of section 205(6), and also falls reasonably within the ambit of a decision of a 'hearing officer' for purposes of Board Rule ch. 8, § 7." *Id.* We reached the same conclusion with respect to mediated agreements. *Id.* ¶ 18.

[¶ 20] To determine whether interest is owed pursuant to section 205(6), we will look to the nature of what is due the employee, and determine whether it is analogous to or in the nature of an award of compensation to the employee.

■ [¶ 21] The payment for a fourteen-day violation is not analogous to an award for compensation because it is payable to the employee without regard to whether that employee suffered any incapacity as a result of a work injury. *Doucette,* 2011 ME 68, ¶¶ 23–24, 21 A.3d 99; *Bridgeman,* 2005 ME 38, ¶¶ 4–5, 17, 872 A.2d 961. We stated in *Bridgeman* that the purpose of the fourteen-day rule is to encourage timely filings by employers and facilitate the administrative decision making process in all cases. 2005 ME 38, ¶ 14, 872 A.2d 961. We reasoned:

An employer's failure to voluntarily pay benefits is ... the triggering event for all subsequent proceedings to determine the compensability of an injury and to award benefits if benefits are due. The filing of a notice of controversy gives notice to the employee and to the Board of an employer's intent to contest a claim. By promulgating Board Rule, ch. 1, § 1, the Board reasonably sought to encourage the timely filing of a notice of controversy to facilitate the administrative process and to ensure "the speedy, efficient, just and inexpensive disposition of all proceedings under this

Act," 39–A M.R.S.A. § 152(2), and "the prompt delivery of benefits legally due," 39–A M.R.S.A. § 151–A.

*Id.*

[¶ 22] Even though a payment for a violation of the fourteen-day rule is made to the employee and is designated as an indemnity payment, the payment is nonrefundable. It is paid without regard to the employee's earning incapacity or his success on the merits of his petition for award. The payment is designed to encourage employers to either timely pay or controvert a claim so that the administrative process can go forward in a timely fashion. The term "benefits" as used in the rule is a measure of how much must be paid by the employer as a payment for the violation; it does not purport to measure any actual loss suffered by the employee.

[¶ 23] In this case the required payment of $61,763.98 is significantly greater than the benefits that the Estate was entitled to receive following the hearing on the merits of the petition for award. The granting of the petition for award entitled the Estate to receive benefits equaling total compensation from the date of incapacity, October 1, 2007, until Michael's death on September 16, 2008. This amounted to $29,693, plus interest in the amount of $2855, for a total award of $32,548. Under the provisions of Board Rule, ch. 1, § 1(4), any payment made for a fourteen-day rule violation shall be credited toward the final award received by Michael's Estate. Because the payment exceeded the amount of the award, Commercial Welding is not obligated to make any further payments to the Estate for benefits that Michael was entitled to during his lifetime. Furthermore, even though the required payment exceeded the finally-determined amount of Michael's benefits, Michael's Estate is entitled to retain the full amount it received from Commercial Welding for the fourteen-day rule violation.

[¶ 24] Because the payment for the fourteen-day rule violation is not compensation paid pursuant to an award, and because neither the statute nor the rule expressly provides for interest on such payments, interest should not be imposed on such payments pursuant to section 205(6) or Board Rule, ch. 8, § 7. *See, e.g., Cobb v. Bd. of Counseling Prof'ls Licensure,* 2006 ME 48, ¶¶ 55–56, 896 A.2d 271 (stating generally that provisions that impose penalties, even if remedial in nature, should be strictly construed against the required payment). And, because the plain language of the Rule requires payment of accrued benefits, not benefits *and interest,* Commercial Welding's violation was cured as of September 2009 when it made the payment of $61,763.98. It was not required to pay interest on this payment.

**B. Offset**

[¶ 25] Commercial Welding asserts that the hearing officer erred when it did not allow it to offset the payment for the death benefits owed to Mary Joyce by the amount of the payment for the fourteen-day rule violation. Commercial Welding argues that because the payment was in excess of the award to the Estate, it *may use the excess amount to offset the* amount it is required to pay to Mary as death benefits.

[¶ 26] Death benefits are authorized by 39–A M.R.S. § 215, which provides that benefits shall be paid to any dependents of the employee for a fixed amount if the employee's death results from a work-related injury.[7]

7. Title 39–A M.R.S. § 215 (2011) provides, in relevant part:

[¶ 27] Commercial Welding violated the fourteen-day rule when responding to Michael's petition for award, but it did not violate the rule when responding to Mary's petition for death benefits. The hearing officer did not allow an offset against the death benefits that were granted to Mary because her claim for death benefits is a separate claim brought pursuant to section 215. The hearing officer did not err in ruling that Mary's claim for death benefits is not subject to an offset pursuant to Board Rule, ch. 1, § 1(4).

[¶ 28] In summary, we vacate the hearing officer's decision ordering Commercial Welding to pay interest on the required payment imposed for the fourteen-day rule violation. Because we conclude that no interest is owed, we further conclude that the fourteen-day rule violation was cured upon Commercial Welding's payment of an amount equal to total benefits from the date of incapacity to the date of the payment. Board Rule, ch. 1, § 1.

[¶ 29] In addition, we affirm the hearing officer's decision that Commercial Welding is not entitled to offset the payments it made pursuant to its violation of the fourteen-day rule against the death benefits that Mary received pursuant to her petition under section 215.

The entry is:

The decision of the Workers' Compensation Board hearing officer is vacated insofar as it (1) awarded interest on the payment imposed pursuant to Me. W.C.B. Rule, ch. 1, § 1, and (2) deemed the violation ongoing for failure to comply with the Rule. The hearing officer's decision that denied Commercial Welding an offset against the award of death benefits to Mary Joyce is affirmed.

1. **Death of employee.** If death results from the injury of an employee, the employer shall pay or cause to be paid to the dependents of the employee who were wholly dependent upon the employee's earnings for support at the time of the injury, a weekly payment equal to 80% of the employee's after-tax average weekly wage, but not more than the maximum benefit under section 211, for a period of 500 weeks from the date of death.
. . . .
2. **Death of an injured employee.** The death of the injured employee prior to the expiration of the period within which the employee would receive weekly payments ends the disability and all liability for the remainder of the payments that the employee would have received in case the employee had lived is terminated, but the employer is liable for the following death benefits in lieu of any further disability indemnity.
A. If the injury received by the employee was the proximate cause of the employee's death and the deceased employee leaves dependents wholly or partially dependent on the employee for support, the death benefit is equal to the full amount that the dependents would have been entitled to receive under subsection 1 if the injury had resulted in immediate death. Benefits under this paragraph are payable in the same manner as if the injury resulted in immediate death.