2012 ME 142

Bryan CARRIER

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued: Nov. 8, 2012.
Decided: Dec. 28, 2012.

John Alsop, Esq. (orally), Alsop & Mohlar, Skowhegan, for appellant Bryan Carrier.

William J. Schneider, Attorney General, and Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for appellee State of Maine.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] Bryan Carrier appeals from a judgment entered in the Superior Court (Somerset County, *Nivison, J.*) denying Carrier's petition for judicial review, pursuant to M.R. Civ. P. 80C, of the decision of a hearing officer of the Secretary of State's Bureau of Motor Vehicles denying Carrier's petition for reinstatement of his ·driver's license pursuant to 29–A M.R.S. § 2454(5) (2012). We affirm the judgment.

## I. BACKGROUND

[¶ 2] In 1996, at age nineteen, Bryan Carrier drove while intoxicated and caused the deaths of three people when he collided with another car. In addition, one of Carrier's passengers sustained serious brain injury. Carrier and a passenger in the other vehicle were also injured. Carri-

er pled guilty to three counts of vehicular manslaughter, 17–A M.R.S.A § 203 (Supp. 1996),[1] and three counts of aggravated operating under the influence, 29–A M.R.S.A § 2411(6) (1996).[2] On June 13, 1997, Carrier was sentenced on the manslaughter counts to the Department of Corrections for a term of ten years, all but two years suspended, with six years of probation and 2000 hours of community service. On the OUI counts, Carrier was sentenced to the Department of Corrections for a term of two years, concurrent with his sentence on the manslaughter counts, and ordered to pay $6000 in fines.

[¶3] The judgment and commitment also provided that "pursuant to applicable statutes," Carrier's license "is suspended in accordance with [the] notice of suspension incorporated herein." The incorporated notice of suspension notified Carrier that his license was suspended for life on the manslaughter counts. The trial court also noted the lifetime suspension in its written sentencing opinion. The abstract of the trial court record sent to the Secretary of State indicates that, as part of his sentence on the manslaughter counts, Carrier's "license is suspended for life." The Secretary of State later notified Carrier that his license was "permanently revoked" by the Secretary of State "under Title 29–A Section 2452(2)"[3] based on his manslaughter convictions.

[¶4] In 2009, Carrier petitioned the Secretary of State for reinstatement of his license pursuant to section 2454(5). The hearing officer[4] denied Carrier's petition, but gave him the right to file a new petition in two years. On Carrier's petition for judicial review, pursuant to M.R. Civ. P. 80C, the Superior Court (Somerset County, *Nivison, J.*) concluded that the relevant standard was whether Carrier presented a threat to public safety and remanded the matter to the hearing officer because it was unclear whether her decision was based on public safety or other grounds. On remand, the hearing officer issued amended findings and conclusions, again denying the petition. Carrier again filed a petition for judicial review, which the Superior Court denied, concluding that the hearing officer's findings reflected reasonable public safety concerns.

[¶5] In 2011, Carrier again petitioned for reinstatement of his license. At the outset of the hearing on the new petition, the hearing officer stated that notices had been sent to family members of the victims of the collision, that "[t]he statute does give the family victims the right to be heard in this matter," and that "the family will be heard." At several points throughout the hearing, Carrier objected to the testimony of the victims' family members, arguing that, as Justice Nivison had determined, the only issue relevant to his petition was public safety. At the close of the hearing, the hearing officer admitted in evidence Justice Nivison's orders. Carrier did not raise any constitutional issues at the hearing, or in his later written submission to the hearing officer.

**1.** Title 17–A M.R.S.A. § 203 has since been amended, most recently by P.L.2001, ch. 383, § 9 (effective Jan. 31, 2003) (codified at 17–A M.R.S. § 203 (2012)), though the amendments are not relevant here.

**2.** Title 29–A M.R.S.A. § 2411(6) was repealed by P.L.2003, ch. 452, § Q–83 (effective July 1, 2004), though the repeal is not relevant here.

**3.** It appears that the reference to 29–A M.R.S. § 2452(2) (2012) was in error, and the notice was intended to reference 29–A M.R.S. § 2454(2) (2012).

**4.** The hearing officer who denied Carrier's first petition was not the same hearing officer who later denied Carrier's second petition, which is the one at issue here.

[¶ 6] Carrier and several members of his family testified in support of his petition. In general, their testimony focused on Carrier's responsibility and attention to safety, particularly in his role as manager of his family's chipping plant. Several witnesses also characterized Carrier as a "nervous" or "defensive" passenger who points out potential hazards to the driver. Carrier and his family also testified to Carrier's successful completion of probation and community service, positive substance abuse evaluation, and participation in therapy, and that Carrier had given up alcohol entirely since the time of his first petition. Carrier submitted several exhibits, including a substance abuse evaluation, letters from his therapist and probation officer, and the 1997 sentencing opinion.

[¶ 7] Carrier's witnesses testified to his need for a license so that he would not have to rely on others to travel to Canada to visit his child from a previous relationship. Carrier's witnesses also explained that he and his wife hoped to move off of the property where the family chipping plant exists, which would require Carrier's wife to drive him to and from work if his license were not reinstated. Carrier also noted his inability to perform work-related tasks that require a vehicle.

[¶ 8] Family members of the victims testified in opposition to Carrier's petition, and letters opposing the petition from a victim's family member, a victim injured in the accident, and the District Attorney were admitted in evidence. The individuals testifying generally emphasized the impact of Carrier's conduct on their respective families, their wish to punish or take something away from Carrier, and their belief that the trial judge had said at sentencing that Carrier's license would be suspended for life. To the extent the family members referred to public safety, they did so based on the facts underlying Carri-

er's convictions rather than on current information. The letters admitted in evidence largely echoed the live testimony.

[¶ 9] The hearing officer issued a written decision denying Carrier's petition. The hearing officer found that there was "no evidence that ... Carrier would pose a risk to the public if his operating privileges were restored," and that Carrier "[c]ertainly ... has a need for his driver's license." Nevertheless, the hearing officer concluded:

I must find that the significance of the families' strong opposition to the Secretary of State issuing a driver's license to Bryan Carrier outweighs Mr. Carrier's need for a license. Therefore, despite the fact that the petitioner's driving may not pose a risk to public safety, his need to drive is less important than honoring the sentence communicated to the family by [the trial judge], respectful of the fact that Bryan Carrier's inability to operate a motor vehicle may bring these families some measure of comfort for their senseless and permanent loss of loved ones.

The hearing officer also concluded that, even if she were inclined to grant the petition, she had "no authority to overturn a decision taken by a Justice of the Superior Court," and was "not allowed to ignore or modify a Superior Court's Criminal Sentence."

[¶ 10] Carrier filed a petition for judicial review of the hearing officer's decision in the Superior Court pursuant to M.R. Civ. P. 80C. The Superior Court denied the petition, concluding that, contrary to its decisions concerning Carrier's first reinstatement petition, license revocation pursuant to 29–A M.R.S. § 2454(2) (2012) is not exclusively remedial in nature. In reaching this conclusion, the court reasoned that section 2454(5) explicitly requires consideration of the testimony of

the victims' families, and drew a distinction between suspension and revocation of a license. Carrier timely appealed.

## II. DISCUSSION

[¶ 11] Carrier argues that the hearing officer, in denying his petition for reinstatement of his license based on the opposition of the victims' families, misinterpreted the statute and exceeded her statutory authority. Carrier argues that administrative license suspensions are remedial, rather than punitive in character, and that there is no substantive distinction between license suspensions and revocations. The Secretary of State argues that the plain language of the statute, by requiring the hearing officer to consider the testimony of the victims' families, mandates consideration of factors other than public safety. The Secretary of State further argues that because an individual has no constitutional or statutory right to a driver's license, the hearing officer's decision on a petition to reinstate a revoked license is discretionary, and the absence of public safety concerns does not require reinstatement.

### A. Standard of Review

[¶ 12] "Because the Superior Court acted as an intermediate appellate court, we directly review the Secretary of State's decision." *McGee v. Sec'y of State*, 2006 ME 50, ¶ 5, 896 A.2d 933. We review issues of statutory and constitutional interpretation de novo. *Id.* We first look to the plain meaning of the statute, interpreting its language "to avoid absurd, illogical or inconsistent results," *Estate of Joyce v. Commercial Welding Co.*, 2012 ME 62, ¶ 12, 55 A.3d 411 (quotation marks omitted), and attempting to give all of its words meaning, *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271. When a statute is unambiguous, we interpret the statute directly, without applying

the rule of statutory construction that "prefers interpretations ... that do not raise constitutional problems," *McGee*, 2006 ME 50, ¶ 18, 896 A.2d 933, and without examining legislative history, *Ashe v. Enterprise Rent–A–Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, or the agency's interpretation, *Cobb*, 2006 ME 48, ¶ 13, 896 A.2d 271. "We look to legislative history and other extraneous aids in interpretation of a statute only when we have determined that the statute is ambiguous." *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 15, 957 A.2d 94. "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Estate of Joyce*, 2012 ME 62, ¶ 12, 55 A.3d 411.

### B. The Reinstatement Statute

[¶ 13] Although 29–A M.R.S. § 2454 (2012) requires permanent administrative revocation of an individual's license after a conviction of homicide resulting from operation of a motor vehicle while intoxicated, it provides for reinstatement in certain circumstances. The statute provides in relevant part:

> **2. While under influence of alcohol or drugs.** The license of any person who, as a result of the operation of a motor vehicle in such a manner as to cause the death of any person, is convicted of criminal homicide ... must be permanently revoked immediately by the Secretary of State upon receipt of an attested copy of the court records, without further hearing, if the report by the district attorney pursuant to section 2455 shows the person was under the influence of intoxicants at the time of the offense.

> ....

> **5. Petition for license reinstatement.** A person whose license is permanently revoked under subsection 2 may petition the Secretary of State for

relicensure 10 years after the date the person is no longer incarcerated. *The Secretary of State shall make the person's petition for relicensure known to the family of any victims of the person's offense and shall consider the family's testimony in determining whether to reissue the person a driver's license. Id.* § 2454(2), (5) (emphasis added). The language of section 2454(5) unambiguously gives the family members of the petitioner's victims the right to notice and an opportunity to be heard in license reinstatement proceedings. Moreover, section 2454(5) affirmatively requires the hearing officer to consider any such testimony in deciding whether to reinstate the petitioner's license. Thus, although we have recognized that administrative license suspensions [5] are imposed to protect public safety, *see DiPietro v. Sec'y of State,* 2002 ME 114, ¶ 11, 802 A.2d 399; *State v. Savard,* 659 A.2d 1265, 1267–68 (Me.1995), the Legislature clearly contemplated that the hearing officer would consider information from victims' family members that does not involve public safety issues in determining whether to reinstate a license revoked under section 2454(2).

[¶ 14] Carrier maintains that section 2454(5) can be interpreted to require the hearing officer to consider the testimony of the victims' families only "as it relates to public safety—for example if they saw the petitioner out drinking and driving without a license," as "the families will have an interest in observing and gathering information on the petitioner." Nothing in the language of the statute suggests such a limitation on the family members' testimony, however, and it would be unreasonable to assume that the victims' families, simply by virtue of their relation to the victim, would have such information. Rather, the unavoidable implication of the statutory language is that the victims' family members will testify as to the impact of the petitioner's conduct on their lives.[6] Based on the plain meaning of the statute, the hearing officer did not err by considering the testimony of the victims' families.

[¶ 15] Carrier argues that the hearing officer granted the family members veto power over reinstatement of his license. We disagree. In this instance, at this point in time, the hearing officer found the testimony of the families more compelling than Carrier's interests.

▉▉ [¶ 16] Carrier has the opportunity to petition for reinstatement in the future. He must present evidence that he has earned the opportunity to drive in spite of his horrendous behavior and its disastrous consequences to the victims and their families. Perhaps he can make a stronger case than his need to drive or his capacity to be a safe driver. The ultimate decision will be up to the Secretary of State and not the victims or their families, but their opinions

---

5. "Suspension of driver's license" is defined as "the temporary withdrawal of a license or privilege to operate a motor vehicle by formal action of the bureau or a court." 29–A M.R.S. § 101(77) (2012). "Revocation of driver's license" means "the termination of a license or privilege to operate by formal action of the bureau or a court. A revoked license may not be restored or renewed but may only be regained by a new application." *Id.* § 101(63).

6. Carrier further suggests that the Legislature simply intended to "involve[ ] the families in the process, so that they don't learn of a reinstatement in a surprising or upsetting way." But it would be illogical to require the Secretary of State to consider family members' testimony if the Secretary of State were not permitted to assign that testimony any weight. Moreover, the statute already protects the victims' families from surprise by requiring that the Secretary of State notify them of the petition. *See* 29–A M.R.S. § 2454(5) (2012).

must be considered then just as they were here. Driving in Maine is not a right but a privilege, *Savard*, 659 A.2d at 1267, and Carrier must show that he has earned that privilege.

## C. Double Jeopardy

[¶ 17] Carrier argues that the hearing officer's decision not to reinstate his license was punitive in character, and therefore violates the constitutional prohibition against double jeopardy. The Secretary of State argues that Carrier did not raise this argument before the hearing officer or in the Superior Court, and therefore failed to properly preserve it for purposes of appellate review. Even if the issue were properly preserved, the Secretary of State argues, there is no double jeopardy issue.

[¶ 18] "Issues not raised at the administrative level are deemed unpreserved for appellate review. This rule applies even to unpreserved issues implicating constitutional questions." *New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me.1988) (citations omitted); *see also Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 24, 39 A.3d 74. Carrier did not raise the issue of a double jeopardy violation before the hearing officer or in his brief to the Superior Court. Carrier contends that he could not have known that the hearing officer would apply the statute in what he alleges to have been an unconstitutional manner, particularly in light of the Superior Court's ruling on his first petition that the hearing officer's decision had to be based on public safety.

[¶ 19] Having been informed at the outset of the hearing that the victims' families would be heard and having objected at several points throughout the hearing on the grounds that evidence submitted in opposition to his petition was irrelevant to the issue of public safety, Carrier cannot plausibly argue that he was unaware that the hearing officer would consider that evidence in reaching her decision. Carrier argued at the hearing that the statute pertained to safety and did not permit the hearing officer to deny his petition for reinstatement of his license based on the testimony of the victims' family members as to their pain and the need to punish Carrier, but failed to apprise the hearing officer of the constitutional dimension of that argument. Nor did Carrier do so in his later written argument to the hearing officer or before the Superior Court. Carrier has therefore failed to preserve his double jeopardy argument.

## D. Equal Protection

[¶ 20] Carrier argues that the statute, as applied by the hearing officer, violates his constitutional right to equal protection, in that it would treat similarly situated petitioners differently based on the "presence, motivation, and persuasiveness" of the victims' families, without any rational relation to a legitimate government interest, such as public safety. The Secretary of State argues that Carrier did not raise this argument before the hearing officer or in the Superior Court, and therefore failed to properly preserve it for purposes of appellate review. Even if the issue were properly preserved, the Secretary of State argues, the Legislature had a rational basis for determining that victim impact is a legitimate consideration in reinstatement proceedings.

[¶ 21] Unlike Carrier's double jeopardy argument, Carrier claimed before the Superior Court that he had been denied equal protection, writing in his brief that permitting the wishes of victims' family members to control reinstatement "may amount to a denial of equal protection of

law." Nevertheless, because he did not raise his equal protection challenge before the hearing officer, Carrier has failed to preserve that issue for appellate review for the same reasons set forth above with respect to double jeopardy. *See New England Whitewater Ctr., Inc.*, 550 A.2d at 58.

 [¶ 22] If we were to reach the merits of Carrier's equal protection argument, we would apply a two-step analysis. *See State v. Poole*, 2012 ME 92, ¶ 8, 46 A.3d 1129; *see also* U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6–A.[7] "To succeed in an equal protection challenge where, as here, the challenging party is not a member of a suspect class, a party challenging a statute must show (1) that similarly situated persons are not treated equally under the law, and (2) that the statute is not rationally related to a legitimate state interest." *MacImage of Me., LLC v. Androscoggin Cnty.*, 2012 ME 44, ¶ 33, 40 A.3d 975 (quotation marks omitted).[8] "When a statute is reviewed under the rational basis standard, it bears a strong presumption of validity. It will be deemed unconstitutional on equal protection grounds only if the discriminatory legislative classification is arbitrary, unreasonable or irrational." *Id.* (citation and quotation marks omitted). Given this extremely low constitutional hurdle, we would uphold the statute as rationally related to the Legislature's legitimate interest in recognizing the continuing impact of criminal homicides resulting from drunk driving on the victims' families.

### E. The Sentence

[¶ 23] Carrier argues that the hearing officer erred in finding that the trial court suspended his license for life, independent of the administrative revocation, and therefore erroneously concluded, as an alternative basis for her decision, that she lacked the authority to reinstate Carrier's license. The Secretary of State argues that the record shows that the trial court suspended Carrier's license for life, despite lacking the authority to do so, and that an administrative appeal is not a proper avenue for Carrier to attack his criminal sentence. We disagree.

[¶ 24] Here the court made reference to the revocation of Carrier's license by the Secretary of State, but did not impose a separate "lifetime suspension." We agree with Carrier that the hearing officer's alternate basis for her decision was incorrect. Nonetheless, we affirm her decision because it was otherwise based on grounds authorized by section 2454(5).

The entry is:

Judgment affirmed.

---

**7.** The United States Constitution provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Maine Constitution provides: "No person shall ... be denied the equal protection of the laws...." Me. Const. art. I, § 6–A. The pro-

tections provided by both clauses are coextensive. *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 26, 989 A.2d 1128.

**8.** The parties agree that the rational basis standard applies.