MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2016 ME 66
Docket:       Kno-14-541
Argued:       September 18, 2015
Decided:      May 3, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Majority:      SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Concurrence:   ALEXANDER, J.


ADOPTION OF LIAM O.


JABAR, J.

[¶1]  The mother of Liam O. appeals from a judgment of the Knox County

Probate Court (*Emery, J.*) denying her petitions to terminate Liam's father's

parental rights and to adopt Liam.  Because the court apparently considered the

*State's* financial interest in determining Liam's best interest, we vacate and remand

to the Probate Court for a new determination of Liam's best interest.

I.  BACKGROUND

[¶2]  Liam was born on September 15, 2010.  In April 2011, in response to a

parental rights and responsibilities petition brought by Liam's mother, the District

Court entered an agreed-upon judgment that awarded sole parental rights and the

right to provide Liam's primary residence to her, granted the father specific contact

rights with Liam, and directed the father to pay child support.  In December 2011,

the mother obtained a protection from abuse order against the father on her own

behalf.  The protection order did not change the father's right to contact with his

2

son, but required the father to arrange for contact through the paternal grandmother. The protection order expired in December 2013.

[¶3] In January 2014, Liam's mother petitioned to adopt him, and to terminate the parental rights of his biological father. *See* 18-A M.R.S. §§ 9-204(a), 9-301 (2015). The father did not respond to her petitions. The Department of Health and Human Services (the Department) filed a motion to intervene pursuant to M.R. Prob. P. 24, citing "the strong interest the State has in protecting the interests of children and ensuring that both parents contribute to the support of their children." Over the mother's objection, the court granted the Department's request for intervenor status.

[¶4] The Probate Court held a final hearing on the mother's petitions on August 6, 2014. On October 24, 2014, the court entered a judgment denying the mother's petitions. The court found that the father had not had any contact with Liam for over three years and had taken no responsibility for his child during those years. Based on this absence from Liam's life, the court found that the father had abandoned Liam.

[¶5] The court also found that the mother "properly protected herself and her child through [c]ourt [o]rders." This finding was premised on the mother's testimony of the father's criminal history, his alcoholism, and his verbally

threatening behavior, including a threat to kill her while she was pregnant with Liam.

[¶6] Notwithstanding these findings, the court denied the mother's petition based on its conclusion that the mother had not met her burden of proof that it was in the child's best interest to terminate the father's parental rights because the mother's income was "sparse, and she had to rely upon state assistance through TANF and other programs," and that "[the mother] is striving to support herself and her children, but she still has insufficient funds to do so." The court further found that "Liam would benefit from child support payments from his father and [the Department] should aggressively collect them."

[¶7] Following the court's decision, the mother moved for further findings, and the court issued supplemental findings and conclusions. Among other determinations, the court stated that contrary to its original finding that the mother has insufficient funds to provide for the child, "[n]o evidence was offered at the hearing, though, about needs of Liam that are not being fully met by his mother." The court also made the following statement explaining its understanding of Maine law:

> This [c]ourt does not find within current statutes that Maine Law envisions terminating the parental rights of a biological parent who has no contact with the child for about three years and who has been granted no parental rights and responsibilities by Maine District Court, except the responsibility to pay child support, as presented by

4

the facts in this case, in order to allow the other biological parent to adopt the child.

The mother filed this timely appeal. *See* 18-A M.R.S. § 1-308 (2015); M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶8] On appeal, the mother contends that the court erred by holding that Maine statutes do not envision the termination of parental rights when there is a support order outstanding. She also contends that the court erred by declining to terminate the father's parental rights because the mother is in receipt of state benefits.

[¶9] We review the court's interpretation of Maine law de novo and the court's determination of best interest twofold: "we review the court's factual findings for clear error, . . . but its ultimate conclusion for an abuse of discretion." *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 12, 60 A.3d 1241; *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260.

[¶10] The Probate Court has had exclusive jurisdiction over adoptions. In 1981, Maine's adoption laws were amended to provide that petitions for termination of parental rights may be brought in Probate Court as part of the adoption process and that the termination standards of the child protection statute would apply. P.L. 1981, ch. 369, (codified at 19 M.R.S. § 533-A (1981)

*repealed by* P.L. 1993, ch. 686, § 3; Deirdre M. Smith, *From Orphans to Families in Crisis: Parental Rights Matters in Maine Probate Courts*, 68 Me. L. Rev. 45, 58 (2016). At the same time, the Legislature added abandonment as a basis for termination of a parent's rights. P.L. 1981, ch. 369, § 16.

[¶11] Although the process is unusual, the Legislature has given a parent the right to adopt her own child, even when her parenthood is not questioned, so that in conjunction with that adoption proceeding, she may seek the termination of the other parent's parental rights.[1] 18-A M.R.S. § 9-204 (2015); *see Dept. of Human Servs. v. Sabbatus*, 683 A.2d 170, 172 (Me. 1996); *see also In re Shane T.*, 544 A.2d 1295, 1296 & n.1 (Me. 1988). Title 18-A M.R.S. § 9-204(a) provides that "[a] petition for termination of parental rights may be brought in Probate Court in which an adoption petition is properly filed as part of that adoption petition." A petition for termination of parental rights initiated in the Probate Court is still subject to the provisions of 22 M.R.S. §§ 4050-4059 (2015). *See* 22 M.R.S. § 9-204(b). In deciding whether to terminate parental rights, the court is required to consider "the best interest of the child, the needs of the child, . . . and the child's physical and emotional needs." 22 M.R.S. § 4055(2). Similarly, when considering

---

[1] This process of allowing one parent to adopt her own child and strip the other parent of his parental rights has been characterized as a form of "private child protection" and criticized because it does not provide for the safeguards present in child protection cases brought by the State pursuant to Title 22. Deirdre M. Smith, *From Orphans to Families in Crisis: Parental Rights Matters in Maine Probate Courts*, 68 Me. L. Rev. 45, 69-70 (2016).

any adoption, the court is required to consider the capacity and disposition of the adopting person to provide "food, clothing and other material needs, [and] education," among other factors. 18-A M.R.S. § 9-308(b)(3) (2015).

[¶12]  Here, the mother petitioned for adoption in order to achieve the termination of the father's parental rights.  The father neither consented to nor contested the mother's adoption of Liam.  As the moving party, the mother had the burden of proving by clear and convincing evidence that the father was not fit to parent Liam and that it was in Liam's best interest to terminate the father's parental rights.  The Probate Court found the father unfit because he had abandoned his child and was "unwilling and unable . . . to provide for the child."  Because the finding of unfitness has not been challenged, we consider whether the court erred when it failed to find that it was in the child's best interest to be adopted by his mother and to have the father's parental rights terminated.

A.    Maine Statutes

[¶13]  The mother contends that the court erroneously concluded that Maine statutes "do not envision" terminating a parent's rights when the parent has support obligations.  Prior to the hearing, the State moved to dismiss the mother's petition as a matter of law arguing that the "mother does not have the right to file an action which would terminate child support while [her] rights to child support are both assigned and subrogated to the Department of Human Services."  Although the

court denied the motion to dismiss, the court appeared to agree with the State's legal position when it denied the mother's petition. In doing so, the court misinterpreted Maine's statutes. A court considering whether to terminate a parent's rights must consider whether termination is in the *child's* best interest. Whether the termination will affect the State's financial interest occasioned by the child's receipt of TANF benefits is not a factor the court may consider in making that determination.

[¶14] Here, the court concluded that Liam would benefit from child support payments from his father. The court also concluded that, despite the father's abandonment of his child, his parental rights cannot be terminated because there is an outstanding order of support against him, and the court appeared to be protecting the State's rights to receive reimbursement. Even though the court articulated this erroneous legal conclusion, it ultimately decided the case on the basis of a separate issue–Liam's best interest. It is impossible to know what role this erroneous legal conclusion played in the court's ultimate determination of Liam's best interest.

B.     Best Interest

[¶15] The determination of the best interest of a child depends upon many factors. *See* 22 M.R.S. § 4055(2). In this case, the court gave significant weight in its best interest calculus to the State's financial interest in collecting reimbursement

8

from the father for state benefits received by the child. Here, the father abandoned his child and failed to provide any child support except through the State's efforts to collect from him as a result of his son's receipt of TANF benefits. *See* 19-A M.R.S. § 2102 (2015). The court stated in its original judgment that

> [d]espite a finding of abandonment, it is not in Liam's best interest[] to terminate [the father's] parental rights for the following reasons. [The mother's] income is sparse, and she has had to rely upon [s]tate assistance through TANF and other programs. She is striving to support herself and her children, but she still *has insufficient funds to do so*.

(Emphasis added). However, in its supplemental findings of fact and conclusions of law the court stated the opposite: "No evidence was presented at the hearing, though, about the needs of Liam that are not being met by his mother."

[¶16] Because of these inconsistent findings, it is impossible to determine whether the court addressed the mother's capacity to provide for the needs of her son. The court emphasized the State's ability to recoup from the father the amounts that the State has paid to the mother for TANF benefits.

[¶17] The court also noted that

Liam would benefit from child support payments from his father and [the Department] should aggressively collect them. If this [p]etition for [t]ermination . . . were granted, [the father] would be relieved of any further obligation to financially support his son and neither petitioner, nor [the Department], would have any right to collect future child support from [the father] for Liam.

The court's analysis conflates Liam's best interest with the State's financial interest in recouping from the father state benefits received by Liam. Whether the termination will affect the State's financial interest occasioned by the child's receipt of TANF benefits is not a factor the court may consider in making that determination. The State's interest does not coincide with Liam's interest for two reasons.

[¶18]  First, if the father's parental rights were terminated, the State would lose its right to recoup future benefits paid by the State by pursuing the father for child support; however, that loss by the State would not affect Liam's entitlement to continuing receipt of state benefits. Title 22 M.R.S. § 4056(4) states that "[n]o order terminating parental rights may disentitle a child the benefit due him from . . . [the] state." Liam is entitled to continue to receive state benefits following the termination of the father's parental rights. Therefore, the State's only interest is in the reimbursement for TANF payments that may be made, not the availability of TANF or other benefits for the child. The State's financial interest in recouping funds from the father should not have been considered a factor in determining Liam's best interest.

[¶19]  Second, if the mother stops receiving state benefits on behalf of Liam, it becomes her choice whether or not to collect child support for Liam from the father, and if she did decide to collect from him, it would be her decision whether

to use the State to assist her. *See generally* 19-A M.R.S. § 1652 (2015). In this situation, the State has no financial interest in the mother's decision, since all money collected, other than a small administrative fee, is returned to the mother for the support of Liam. The court erred as a matter of law in considering the State's financial interest as a factor in its determination of Liam's best interest.

## III. CONCLUSION

[¶20] We remand the case to the Probate Court to consider Liam's best interest and the mother's ability to provide for the needs of her son without considering the State's interest in seeking reimbursement for any state benefits received by the mother. The inconsistent findings and conclusions by the court and the absence of any evidence of the mother's financial condition make it impossible to review the court's determination that the mother failed to prove that adoption and termination was in Liam's best interest. The fact that the mother is collecting TANF, standing alone, cannot support a finding that she does not have the capacity to provide for her child.[2]

The entry is:

> Judgment vacated. Remanded to the Probate Court for further proceedings consistent with this opinion.

---

[2] Because we are vacating the Probate Court's decision in this matter, we do not at this time reach the merits of the mother's appeal that she was denied due process.

ALEXANDER, J., concurring.

[¶21]  I concur in and join the Court's opinion.  I write separately to address the important policy issue raised by the Department of Health and Human Services.

[¶22]  The Court's thorough statutory analysis demonstrates that the private termination of parental rights statute, 18-A M.R.S. § 9-204 (2015), and the private adoption statutes, 18-A M.R.S. §§ 9-301 to 9-315 (2015), combine to allow a private action between a child's parents to effectively terminate a parent's obligations to pay child support.  These laws can be invoked to exempt a parent from making child support payments, even when the State is paying welfare benefits to provide food, clothing, shelter, and medical care for the child.

[¶23]  As the Court's opinion points out, a State initiated termination of parental rights action pursuant to 22 M.R.S. §§ 4050-4059 (2015) has the same effect, ending a parent's obligation to pay support for his or her child when his or her parental rights are terminated pursuant to law.  *Id*. § 4056.

[¶24]  This result—ending a parent's obligation to support that parent's child while the public, through State welfare programs, continues to pay or begins to pay to support the child—is not mandated by the Constitution or any judicial opinion.

It is a result of policy choices made by the Legislature reflected in the statutes addressed in the Court's opinion. These statutory provisions, particularly 22 M.R.S. § 4056, support the goal of termination of parental rights actions, and the corresponding private adoption actions, to end all aspects of a relationship between a child and a biological parent who has demonstrated that he or she is an unfit parent by abandoning or abusing the child, damaging the child, and requiring court intervention to protect the child from further damage.

[¶25] The Department of Health and Human Services in this appeal advocates a valid policy position that a parent who is unfit to parent a child should, nevertheless, remain obligated to pay child support to the Department to reduce the burden on public funds, paid through welfare programs, to support that unfit parent's biological child. However, the Legislature, not the courts, is the forum in which that issue should be addressed.

[¶26] The Department's concern could be addressed by statutory amendments such as a requirement that parents whose parental rights are terminated continue to pay child support, to the extent of their ability, to the Department of Health and Human Services. The support payments could go into a fund to offset welfare benefits paid to support children in need of public assistance who have no relationship with a biological parent or parents because that relationship has been terminated. Such an arrangement would not result in any

contact or legal obligation between the biological parent and the child, but would achieve the Department's objective to ensure that a biological parent remains responsible and obligated to support his or her child to avoid or reduce the child's need for public assistance.

---

**On the briefs:**

Sarah I. Gilbert, Esq., Elliott & MacLean, LLP, Camden, for appellant mother

Janet T. Mills, Attorney General, and Christopher C. Leighton, Asst. Atty. Gen., Office of the Attorney General, Portland, for appellee Department of Health and Human Services

**At oral argument:**

Sarah I. Gilbert, Esq., for appellant mother

Christopher C. Leighton, Asst. Atty. Gen., for appellee Department of Health and Human Services